**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant General Electric Capital Assurance Company[1] ("GECA"), by and through its undersigned legal counsel, hereby moves, pursuant to Fed. R. Civ. P. Rule 56, for summary judgment in favor of GECA as to all claims asserted in the Complaint. In support thereof, GECA avers as follows:

## PROCEDURAL HISTORY

1.     On or about March 18, 2002, Plaintiff Roscoe Franklin commenced this action against GECA by the filing of a Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania.

2.     In his Complaint, Mr. Franklin asserts claims under Pennsylvania law against GECA for breach of contract, bad faith by an insurer, and unfair or deceptive trade practices.

3.     On or about May 29, 2002, GECA filed notice of removal of this action to the United States District Court for the Eastern District of Pennsylvania, on the basis of the diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

---

[1]     Plaintiff misstates the name of Defendant in the Complaint as GE Financial Assurance Company. For purposes of this Motion for Summary Judgment, GE Capital Assurance Company does not dispute that it is the entity named in the Complaint.

4.      On or about June 4, 2002, GECA filed its Answer and Affirmative Defenses to the Complaint.

5.      The parties exchanged discovery.

## UNDISPUTED ISSUES OF MATERIAL FACT

6.  Mr. Franklin is an "Insured Person" under a group insurance policy issued by GECA ("Policy") to Sentry Federal Credit Union ("Credit Union").[2] Affidavit of Patricia Carrillo, ¶¶ 3, 4 and Exhibit "1" (GE00001-GE00028).

7.  The Policy consists of a series of written documents setting forth the terms and conditions of insurance coverage. *See* Exhibit "A" to Complaint; Affidavit of Patricia Carrillo, ¶ 4 and Exhibit "1" (GE00001-GE00028).

8.  The Policy provides accidental injury or death coverage for Credit Union members. *See* Complaint, ¶¶ 4 and 5; Affidavit of Patricia Carrillo, ¶¶ 6, 7 and Exhibit "1" (GE00003, GE00005).

9.  Mr. Franklin, enrolled for non-contributory coverage under the Policy as a Credit Union member. *See* Affidavit of Patricia Carrillo, ¶ 6 and Exhibit "1" (GE00003, GE00005, GE00018).

10. Mr. Franklin elected additional voluntary coverage under the "Family Plan," which also covered his wife (his sole dependant). Affidavit of Patricia Carrillo, ¶¶ 14, 15 and Exhibit "1" (GE00003, GE00004, GE00005, GE00018).

11. As set forth in the provision headed "BENEFIT PROVISION ADD—ACCIDENTAL DEATH AND DISMEMBERMENT BENEFIT," the benefit payable under the Policy upon the

---

[2] The Credit Union was formerly known as Scott Federal Credit Union. Exhibit "1" (GE 00022).

"Loss of Life" of an "Insured Person" is defined as equal to 100% "of the Principal Sum stated

for such loss." Exhibit "1" (GE 00009, GE00020).

12. The Policy expressly defines the "Principal Sum" applicable to losses sustained by an

insured spouse as follows:

> If an Insured Member has applied for the "Family Plan" and paid
> the premium required for it, *his or her spouse is automatically*
> *insured for a Principal Sum that is 50% of the contributory*
> *Principal Sum which applied to the Insured on the date of the*
> *accident. If there are no insured children on the date of the*
> *accident, this percentage is increased to 60%.*

Exhibit "1" (GE00005 [emphasis added]; *see also*, GE00019, GE00024).

13. The Policy expressly provides that the benefit payable in the case of a "loss

sustained by an Insured Person as a result of an accident which occurs on or after the date such

person attains 70 years of age *shall be reduced to 50% of the benefits otherwise payable*."

Exhibit "1" (GE00005 [emphasis added]; *see also* GE00019, GE00024).

14. On or about February 3, 1998, Mr. Franklin submitted a Coverage Increase

Request. Affidavit of Patricia Carrillo, ¶ 16 and Exhibit "2" (GE00032).

15. Pursuant to the Coverage Increase Request that Mr. Franklin submitted in 1998,

the Contributory Principal Sum under the Policy as of December 2000 was $30,000. Affidavit of

Patricia Carrillo, ¶ 17 and Exhibit "2" (GE00032).

16. In or around December 2000, Mr. Franklin submitted a claim for insurance

benefits on account of the accidental death of his wife. Mr. Franklin reported that his wife died

as a result of an accident on December 12, 2000. He also reported that her date of birth was

October 23, 1927, indicating that she was 73 years old at the time of the accident that caused her

death; Affidavit of Patricia Carrillo, ¶¶ 18, 19 and Exhibit "3" (GE00033-34).

17.    Under the terms of the Policy, Mr. Franklin was entitled to a Continuous Coverage Bonus of 5% for each two years of continuous coverage. In calculating the benefit payable to Mr. Franklin, GECA applied a Continuous Coverage Bonus of 10% to the entire amount of coverage.  Complaint, ¶ 20; Plaintiff's Response to Interrogatories, ¶ 6; Affidavit of Patricia Carrillo, ¶ 12.

18.    GECA calculated the total benefit payable as follows:

| | |
|---|---|
| $30,000 | Contributory Principle Sum |
| x 60% | Spousal Benefit with No Insured Children |
| x 50% | Benefit Reduction for Loss to Insured Person Aged 70 or More |
| x 110% | Continuous Coverage Bonus |
| $9,900 | TOTAL |

Affidavit of Patricia Carrillo, ¶ 21.

19.    On or about July 12, 2001, GECA issued a check in the amount of $9,900 payable to Mr. Franklin, together with an explanation of the benefit calculation. Complaint, ¶ 13; Plaintiff's Responses to Interrogatories, ¶ 3; Affidavit of Patricia Carrillo, ¶ 22 and Exhibit "4" (GE00035, GE00036).

20.    There are no disputed issues of material fact in this matter.


**SUMMARY JUDGMENT -- COUNT I**

21.    Defendant GECA incorporates and reasserts the averments of each of the preceding paragraphs as if fully set forth herein.

22.    GECA has fully performed its contractual obligation, by paying Mr. Franklin the entire sum to which he is entitled under the terms of the Policy.

23.    GECA is entitled to summary judgment in its favor as a matter of law as to Count I of the Complaint.

## SUMMARY JUDGMENT -- COUNT II

24.    Defendant GECA incorporates and reasserts the averments of each of the preceding paragraphs as if fully set forth herein.

25.    GECA has paid the full amount of benefits for which the Policy provides upon the accidental death of Mr. Franklin's spouse, and has not unreasonably refused any payment to which Mr. Franklin is entitled under the Policy.

26.    GECA is entitled to summary judgment in its favor as a matter of law as to Count II of the Complaint.

## SUMMARY JUDGMENT -- COUNT III

27.    Defendant GECA incorporates and reasserts the averments of each of the preceding paragraphs as if fully set forth herein.

28.    GECA has paid the full amount of benefits for which the Policy provides upon the accidental death of Mr. Franklin's spouse.

29.    GECA has never represented to Mr. Franklin that he would ever receive any benefits in excess of those for which the Policy itself provides.

30.    GECA is entitled to summary judgment in its favor as a matter of law as to Count III of the Complaint.

**WHEREFORE,** Defendant GECA respectfully moves that the Court render summary judgment in its favor, and dismiss the Complaint in its entirety and with prejudice.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN**
**& MELLOTT, LLC**

By:    _____
Heather E. Rennie, Esquire
Eric M. Fink, Esquire
1515 Market Street, 9th Floor
Philadelphia, PA 19102

Attorneys for Defendant

Dated:  February 17, 2003

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, I have today served a true and correct copy of the foregoing

Defendant's Motion for Summary Judgment and accompanying Brief in Support thereof, via first

class mail, postage prepaid upon the following counsel of record:

Robert J. Sugarman, Esquire
100 North 17th Street, 11th Floor
Philadelphia, PA 19103

**Attorney for Plaintiff**


_____
ERIC M. FINK

Dated:  February 20, 2003

## **VERIFICATION**

I, Nancy Kappes, hereby verify that I am employed by the Defendant in this matter, that I am authorized to make this Verification on behalf of the Defendant, and that the facts set forth in the foregoing pleading are true and correct to the best of my knowledge, information and belief. I understand that statements herein are made pursuant to 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_____

NANCY KAPPES

Dated:  February __, 2003

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Roscoe Franklin,                          :
                                          :
                    Plaintiff,            :        Civil Action
                                          :
          v.                              :        No.  02-CV-3359
                                          :
GE Financial Assurance Company,           :        Judge O'Neill
                                          :
                    Defendant.            :


### <u>ORDER</u>

  **AND NOW**, this ___ day of _____, 2003, upon consideration of the Defendant's

Motion for Summary Judgment, and any response thereto, it is hereby **ORDERED**,

**ADJUDGED** and **DECREED** that the Defendant's Motion for Summary Judgment is

**GRANTED**.  Judgment is hereby ordered in favor of the Defendant and against the Plaintiff as

to all counts of the Complaint, and the Complaint is hereby **DISMISSED** in its entirety with

prejudice.


       BY THE COURT:


       _____
                     J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

I.    **STATEMENT OF THE CASE**

A.    **Procedural History**

Plaintiff Roscoe Franklin commenced this action with the filing of a complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania. Defendant GE Capital Assurance ("GECA") filed a timely notice of removal to the U.S. District Court. Defendant GECA then filed its Answer. The parties subsequently exchanged discovery.

GECA contends that Mr. Franklin has raised no genuine issue of material fact for trial, and that, as a matter of law, Mr. Franklin is entitled to none of the relief he seeks. Therefore, GECA now moves for summary judgment in its favor as to all counts of the Complaint.

B.  **Statement of the Facts**

Mr. Franklin is an "Insured Person" under a group insurance policy issued by GECA ("Policy") to Sentry Federal Credit Union ("Credit Union").  The Policy consists of a series of written documents setting forth the terms and conditions of insurance coverage. The Policy

provides accidental injury or death coverage for Credit Union members. (Carrillo Aff. ¶¶ 3-7 and Exhibit "1" [GE00001-GE00028]; *see also* Complaint, ¶¶ 4-5 and Exhibit "A").

Mr. Franklin enrolled for non-contributory coverage under the Policy as a member of the Credit Union. Mr. Franklin elected additional voluntary coverage under the "Family Plan," which also covered his wife (his sole dependant). (Carrillo Aff., ¶¶ 6, 7, 14, 15 and Exhibit "1" [GE00003, GE00004, GE00005, GE00018]).

The amount of benefits payable under the Policy depends on the "Principal Sum," of which there are two components. The "Non-Contributory Principal Sum" pertains to the coverage that a Credit Union member receives at no cost upon enrollment. The "Contributory Principal Sum" pertains to the coverage that a member elects under the Family Plan. In the case of a spousal claim (where there are no other covered dependents), the applicable principal sum is equal to sixty percent (60%) of the Contributory Principal Sum. Where a claim is for accidental death, one hundred percent (100%) of that amount (i.e. 60% of the Contributory Principal Sum) is payable. However, where the covered individual is more than seventy years old, the benefit is "reduced to 50% of the benefits otherwise payable."   Carrillo Aff. ¶¶ 8-13 and Exhibit "1" [GE00005, GE0009, GE00019, GE00020, GE00024]).

Mr. Franklin's wife died as the result of an accident on December 12, 2000. (GE00033 [Notice of Claim]). At the time of her death, she was more than seventy (70) years old. (*See* GE00033 [Notice of Claim]). The "Contributory Principal Sum" on the Policy was then $30,000. (Carrillo Aff., ¶ 17 and Exhibit "2" [GE000032]). The Principal Sum under the Policy for a loss sustained by Mr. Franklin's wife was therefore $9,000 (i.e. $30,000 x 60% for spousal loss x 50% for insured person over age 70).  The benefit payable upon the death of Mrs. Franklin was

100% of that Principal Sum. In addition, GECA applied a Continuous Coverage Bonus of 10% to the total amount of coverage.[1] (Complaint, ¶ 9; Plaintiff's Response to Interrogatory No. 6; Carrillo Aff., ¶ 20). Accordingly, on July 12, 2001, GECA issued a check to Mr. Franklin in the amount of $9,900, together with an explanation of the benefit calculation. (Plaintiff's Response to Interrogatory No. 3; Carrillo Aff., ¶¶ 21-22 and Exhibit "3" [GE00035, GE00036]).

Notwithstanding the express terms of the Policy, Mr. Franklin contends that he was entitled to benefits in an amount equal to the total Principal Sum plus the Continuous Coverage Bonus, which he asserts amounts to $34,100.[2] (Complaint, ¶ 10; Plaintiff's Responses to Interrogatories, ¶¶ 7, 8). He asserts claims against GECA for breach of contract, bad faith conduct by an insurer (42 Pa. C.S. § 8371), and unfair or deceptive trade practices (73 P.S. §§ 201-3 and 201-9.2).

GECA maintains that its payment of $9,900 represented the full amount of benefits payable on Mr. Franklin's claim under the terms of the Policy, and that it made no representation to Mr. Franklin that he would recover any benefits in excess of those for which the Policy itself expressly provides. Accordingly, GECA has fulfilled its contractual obligation, acted in good faith, and committed no unfair or deceptive practice.

---

[1] Under the express terms of the Policy, a 10% bonus should have applied only to the first $10,000 in coverage, which had been in effect since 1996. The bonus on the remaining $20,000, in effect only since 1998, should have been 5%. Consequently, the Continuous Coverage Bonus that Mr. Franklin received was actually greater than that to which he was entitled under the Policy. For purposes of this Motion for Summary Judgment, however, GECA does not contest the application of a 10% bonus to the entire coverage amount. *See* Carrillo Aff. ¶ 20.

[2] In setting forth the basis for his computation of benefits allegedly payable, Mr. Franklin contends that the applicable Principal Sum was $31,000. (*See* Plaintiff's Response to Interrogatory No. 7). Mr. Franklin evidently fails to distinguish between the "Non-Contributory" Principal Sum, which pertains to the automatic coverage that he received as a Credit Union member, and the "Contributory" Principal Sum, which pertains to coverage under the Family Plan. (*See* GE00005, GE00019). In this regard, GECA observes that the clear and unambiguous Policy documents speak for themselves.

3

II.  **ARGUMENT**

A.  **Standard for Summary Judgment**

Summary judgment is proper whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. Rule 56(c); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986); *Kosierowski v. Allstate Ins. Co.,* 51 F. Supp. 2d 583, 587 n.2 (E.D. Pa. 1999), *aff'd without op.* 234 F.3d 1265 (3d Cir. 2000). On a motion for summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kosierowski*, 51 F. Supp. 2d at 587 n.2. A party is entitled to summary judgment where the opposing party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Kosierowski,* 51 F. Supp. 2d at 587 n.2.

The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. Rule 56(e); *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 583 (E.D. Pa. 1999). The opposing party "may not rest upon the mere allegations or denials of [that] party's pleading." Fed. R. Civ. P. Rule 56(e); *Bostick*, 56 F. Supp. 2d at 583. Nor will mere existential doubt as to an issue of fact suffice. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with "sufficient evidence upon which a reasonable jury could return a verdict" in its favor. *Bostick*, 56 F. Supp. 2d at 583; *accord Anderson*, 477 U.S. at 248.

**B.    GECA Has Performed its Contractual Duty By Paying the Full Amount of Benefits to Which Mr. Franklin is Entitled Under the Terms of the Policy**

Mr. Franklin alleges that GECA breached its contractual duty under the Policy by refusing to pay more than $9,900 in benefits on account of the death of Mrs. Franklin. Under the clear and unambiguous terms of the Policy, however, the total amount of benefits payable on this claim was precisely $9,900. Because GECA has paid all that it owed, the breach of contract claim fails as a matter of law.

Under Pennsylvania law, the interpretation of an insurance policy, like any other contract, is a question of law appropriate for resolution by the court on summary judgment. *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. 2000); *Sorbee Int'l. v. Chubb Custom Ins.*, 735 A.2d 712, 714 (Pa. Super. 1999). It is for the court to decide whether the terms of the contract are clear and unambiguous, and, if so, to construe the meaning of those terms. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991); *CGU Life Ins. Co. of Am. v. Metropolitan Mortg. & Secs. Co.*, 131 F. Supp. 2d 670, 675 (E.D. Pa. 2001). The mere fact that the parties have differing views as to the correct interpretation does not make the contract ambiguous. *Williams*, 750 A.2d at 885; *Sorbee Int'l*, 735 A.2d at 714; *accord Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 93 (3d Cir. 2001), *cert. denied*, 534 U.S. 1162 (2002); *Barrer v. Metropolitan Life Ins. Co*, 151 F. Supp. 2d 617, 621 (E.D. Pa. 2001). Rather, when construing an insurance policy, "a provision is ambiguous only if reasonable people could, in the context of the entire policy, fairly ascribe differing meanings to it." *Frog Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 422 (E.D. Pa. 2001); *Barrer*, 151 F. Supp. 2d at 621-22. Where the terms are clear and unambiguous, the court may look only to the document itself, and may not consider extrinsic evidence. *Capek v. Devito*, 564 Pa. 267, 767 A.2d 1047, 1050 (2001);

*Kelaco v. Davis & McKean Gen. P'ship*, 743 A.2d 525, 528 (Pa. Super. 1999); *accord Perry v. Sonic Graphic Sys., Inc.*, 94 F. Supp. 2d 616, 619 (E.D. Pa. 2000). "The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation." *Kelaco*, 743 A.2d at 528 (citations omitted).

The terms of an insurance policy define the circumstances under which benefits are payable and the amount of benefits to be paid on a given claim. An insurer satisfies its contractual duty when it pays the full amount of benefits in accordance with the terms of the policy. *Klinger v. State Farm Mut. Auto Ins. Co.*, 895 F. Supp. 709, 712-13 (M.D. Pa. 1995), *aff'd* 115 F.3d 230 (3d Cir. 1997). A refusal to pay benefits beyond those for which the terms of the policy provide does not constitute a breach of contract. *Barrer*, 151 F. Supp. 2d at 622-25. Thus, where the terms of a policy are clear and unambiguous, and where the facts giving rise to a claim are undisputed, a court will grant summary judgment in favor of an insurer that has abided by those terms. *See Klinger*, 895 F. Supp. at 712-13; *Barrer*, 151 F. Supp. 2d at 622-25.

The applicable terms of the Policy here are readily ascertainable on the face of the Policy itself. In the case of an accidental death, the benefit payable is 100% of the "Principal Sum stated" in the Policy. *See* "Benefit Provision ADD — Accidental Death and Dismemberment Benefit" (GE000009). The Policy expressly defines the applicable "Principal Sum" for the spouse of the policyholder (where there are no insured children) as equal to 60% of the "Contributory Principal Sum which applied to the Insured on the date of the accident." (GE000005 and GE 000024). In addition, the Policy explicitly provides that, in the case of a "loss sustained by an Insured Person as a result of an accident which occurs on or after the date such person attains 70 years of age," the amount of benefits payable "shall be reduced to 50% of the benefits otherwise payable." (GE000005 and GE 000024).

There is nothing unclear or ambiguous about any of these terms. Taken together, they establish that the amount that Mr. Franklin was entitled to recover on account of his wife's death depended on two factors: (1) the amount of the Contributory Principal Sum under the policy, and (2) the age of Mr. Franklin's wife at the time of her death. There is no genuine dispute as to the amount of the Contributory Principal Sum, which was $30,000, as clearly stated on the Coverage Increase Request form that Mr. Franklin himself submitted.[3] Nor is there any dispute as to the fact that Mrs. Franklin was more than 70 years old when she died. The Court is therefore in a position to determine, as a matter of law, whether the payment of benefits by GECA complied with the terms of the Policy. *See Klinger*, 895 F. Supp. at 712-13 (granting summary judgment on breach of contract claim where insurer paid full amount due in accordance with terms of policy); *Barrer*, 151 F. Supp. 2d at 622-25 (granting summary judgment where insured had "no reasonable expectation of coverage" in light of clear and unambiguous policy language); *cf. Giangreco*, 168 F. Supp. 2d at 422-24 (denying summary judgment where policy terms are clear and unambiguous, but factual dispute exists as to basis for denial); *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 584-85 (E.D. Pa. 1999) (same).

---

[3]     In the Complaint (¶ 8) , Mr. Franklin avers that "the applicable Principal Sum" under the Policy "was originally $51,000, but, according to GE, was reduced to $31,000 on or about April 1, 1998 after a series of changes over the years." In his answers to interrogatories (¶¶ 7, 8), Mr. Franklin likewise contends that the applicable Principal Sum was $31,000. Those assertions are utterly lacking in evidentiary foundation. The Coverage Increase Request form (GE000032), which Mr. Franklin himself submitted, clearly and unambiguously states that the Contributory Principal Sum is $30,000. As previously explained (note 1, *supra*), Mr. Franklin has evidently added the "Non-Contributory" Principal Sum, which pertains only to the coverage he automatically received as a Credit Union member, to the "Contributory" Principal Sum, on which the benefit payable in this case depended. However, in the face of the unambiguous documentary evidence, there can be no genuine dispute as to this factual issue.

The calculation of the benefit payable under the Policy is elementary:

$$
\begin{array}{rcl}
\text{Contributory Principal Sum} & = & \$30,000 \\
\text{x 60\% for spousal claim} & = & \$18,000 \\
\text{x 50\% for Insured Person over age 70} & = & \$\ 9,000
\end{array}
$$

To that amount, a Continuous Coverage Bonus of 10% is added, yielding a total benefit payable of $9,900 (i.e. $9,000 x 110%). That is, of course, precisely the amount that GECA paid. Accordingly, GECA is entitled to summary judgment in its favor on the breach of contract claim. *See Klinger*, 895 F. Supp. at 712-13; *Barrer*, 151 F. Supp. 2d at 624-25.

Where Mr. Franklin's understanding of the Policy apparently founders is in reading one provision of the Policy—the "Benefit Provision ADD — Accidental Death and Dismemberment Benefit"—in isolation, rather than in conjunction with the other applicable terms. As Mr. Franklin's counsel asserted in a letter to a benefit specialist for GECA:

> [The Accidental Death and Dismemberment] Benefit says that you will pay 100% of the Principal Sum in the event of loss of life and that is what occurred in our case. This provision even emphasizes that only the greatest benefit that is payable under the policy will be paid. Thus, the amount payable to Mr. Franklin in the case of his wife's death should be 100% of the Principal Sum - $31,000 plus the 10% Continuous Coverage Bonus Benefit of $31,00 for a total amount payable of $34,100 under the policy.

GE000038-39; *see also* Complaint, ¶ 8 (alleging that "applicable Principal Sum" was $31,000).

While Mr. Franklin thus relies solely on the "Accidental Death and Dismemberment Benefit" schedule, that provision does not stand alone. Rather, in accordance with established principles of contract interpretation, the Policy must be construed as a whole, giving meaning to all of its terms. *See Capek*, 767 A.2d at 1050; *Sorbee Int'l*, 735 A.2d at 717; *Frog Switch*, 193 F.3d at 746. Mr. Franklin and his counsel simply overlook—or choose to disregard—the express Policy terms defining the applicable Principal Sum for spousal losses and providing for a 50%

reduction in the case of an insured person over the age of 70. Mr. Franklin did indeed receive

100% of that Principal Sum, just as the "Accidental Death and Dismemberment Benefit"

schedule provides.

There is no genuine dispute as to any of the material facts surrounding Mr. Franklin's

claim for benefits. Rather, the sole disagreement is over the proper interpretation of the policy

terms and their application to the claim at issue here.  Those terms are clear and unambiguous.

Reading all of the terms of the Policy and applying them in conjunction with one another, it is

simply implausible to understand the Policy as providing for a benefit greater than the $9,900

that GECA has paid. Because Mr. Franklin received all that was due under the terms of the

Policy, his claim for breach of contract is groundless, and GECA is entitled to summary

judgment in its favor as a matter of law.

### C.    The Claims for Bad Faith and Consumer Fraud Are Likewise Meritless

In addition to alleging a breach of contract, Mr. Franklin also asserts statutory claims for

bad faith by an insurer under 42 Pa. C.S. § 8371, and unfair or deceptive trade practices under 73

P.S. § 201-1 *et seq.* Those claims similarly rest on the contention that Mr. Franklin was somehow

entitled to collect more than the $9,900 that GECA paid on account of the death of Mrs.

Franklin. Because GECA has not unreasonably denied any claim, and because GECA never

represented to Mr. Franklin that he would recover more than the amounts for which the Policy

itself provides, the bad faith and consumer fraud claims must fail.

### 1.    GECA Did Not Act in Bad Faith, But Reasonably Calculated and Paid Benefits to Mr. Franklin Based on the Express Terms of the Policy

Pennsylvania statute provides for a cause of action against an insurer for the bad faith

denial of a claim for benefits  42 Pa. C.S. § 8371. Both state and federal courts have repeatedly

defined "bad faith" by an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." *See, e.g., Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999), *appeal denied*, 563 Pa. 655, 759 A.2d 381 (2000); *Frog Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.1 (3d Cir. 1999); *Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997); *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), *aff'd without op.* 234 F.3d 1265 (3d. Cir. 2000). Bad faith in this context is more than "mere negligence or bad judgment." *Adamski*, 738 A.2d at 1036; *Frog Switch*, 193 F.3d at 751 n.1; *Kosierowski*, 51 F. Supp. 2d at 588. Thus, an insurer does not act in bad faith when its "conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999); *accord J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 510 (1993).

A plaintiff asserting a claim under Pennsylvania's "bad faith" statute must establish that the insurer denied benefits without any reasonable basis, and that the insurer either knew, or recklessly disregarded the fact, that it lacked a reasonable basis for denial. *Adamski*, 738 A.2d at 1036; *Klinger*, 115 F.3d at 233; *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999); *Kosierowski*, 51 F. Supp. 2d at 588; *Leo v. State Farm Mut. Auto Ins. Co*, 939 F. Supp. 1186, 1190 (E.D. Pa. 1996), *aff'd without op.*, 116 F.3d 468 (3d Cir. 1997). Both elements of a "bad faith" claim require proof "by clear and convincing evidence." *Adamski*, 738 A.2d at 1036; *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Bostick*, 56 F. Supp. 2d at 587; *Kosierowski*, 51 F. Supp. 2d at 588. This heightened evidentiary standard applies on a motion for summary judgment. *Bostick*, 56 F. Supp. 2d at 587.

While Mr. Franklin contends that GECA acted in bad faith by refusing the pay him more than $9,900 in benefits, he offers no evidence whatsoever to substantiate that claim. Rather, he

bases his claim solely on his misreading of the Policy. *See* Plaintiff's Responses to Interrogatories, ¶ 8. GECA has repeatedly explained the basis of its calculation of benefits under the terms of the Policy. There is simply no indication here that GECA's explanation was specious or pretextual. Thus, even if GECA's interpretation of the Policy were somehow incorrect, there is no basis on which to conclude that GECA acted in bad faith. *See Bostick*, 56 F. Supp. 2d at 587 (granting summary judgment in favor of insurer on "bad faith" claim, where insurer denied claim on basis of expert investigative report, and insured presented no evidence that insurer's denial of claim was unreasonable, but merely relied on insurer's standard brochure); *cf. Klinger*, 115 F.3d at 233-34 (holding insurer acted in bad faith by refusing to pay benefits for two years after arbitrator's determination of available coverage).

Mr. Franklin has failed to adduce any evidence, let alone evidence of a clear and convincing nature, to suggest that GECA acted unreasonably and did so knowingly or with reckless disregard. Because, Mr. Franklin cannot meet his burden, GECA is entitled to summary judgment in his favor on the "bad faith" claim.

## 2.    GECA Made No Fraudulent Misrepresentation to Mr. Franklin

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), 73 P.S. §§ 201-1 *et seq.*, establishes a cause of action for "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. §§ 201-3 & 201-9.2. As state and federal courts have repeatedly observed, the mere refusal of an insurer to pay benefits on a claim is not an "unfair or deceptive act[ ] or practice[ ]" within the meaning of the statute. *See, e.g., Fay v. Erie Ins.* Group, 723 A.2d 712 (Pa. Super. 1999); *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600, 603 (Pa. Super. 1988); *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995); *Leo v. State Farm Mutual Auto Ins. Co.*, 939 F. Supp. 1186,

1193 (E.D. Pa. 1996), *aff'd without op.*, 116 F.3d 468 (3d Cir. 1997); *Klinger v. State Farm Mut.*

*Auto Ins. Co.*, 895 F. Supp 709, 717 (M.D. Pa. 1995) (collecting cases), *aff'd* 115 F.3d 230 (3d

Cir. 1997). Rather, an insurer is liable under the Consumer Protection Law only for fraudulent

misrepresentation or similar malfeasance. *Fay*, 723 A.2d at 714; *Gordon*, 548 A.2d at 603-04;

*Hardy v. Pennock Ins. Agency, Inc.*, 529 A.2d 471, 478-79 (Pa. Super. 1987); *Pekular v. Eich*,

513 A.2d 427, 433-34 (Pa. Super. 1986); *Horowtiz*, 57 F.3d at 307; *Leo*, 895 F. Supp. at 1193;

*Klinger*, 895 F. Supp. at 717-18.

A claim against an insurer under the Consumer Protection Law for alleged fraudulent

misrepresentation requires proof that the insurer made a false representation, that the

misrepresentation was, or had a tendency to be, deceptive, that the misrepresentation was likely

to make a difference in a consumer's decision whether to purchase coverage, and that the

plaintiff relied on or suffered a loss because of the misrepresentation. *Fay*, 723 A.2d at 714;

*accord Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 423-24 (E.D. Pa. 2001);

*Fisher v. Aetna Life Ins. & Annuity Co.*, 39 F. Supp. 2d 508, 511 n.1 (M.D. Pa. 1998), *aff'd*

*without op.*, 176 F.3d 472 (3d Cir. 1999). To survive a motion for summary judgment, the

plaintiff must produce "clear, precise and convincing" evidence of fraud. *Fisher*, 39 F. Supp. 2d

at 511-12. Where an insurance policy clearly and unambiguously spells out the terms of

recovery, a claim under the Consumer Protection Law will fail, absent evidence that the insured

relied to his detriment on a material misrepresentation by the insurer. *Fay*, 723 A.2d at 715;

*Barrer v. Metropolitan Life Ins. Co.*, 151 F. Supp. 2d 617, 621 (E.D. Pa. 2001); *Fisher*, 39 F.

Supp. 2d at 512-13, 515-16.

In his Complaint, Mr. Franklin asserts that GECA "represented . . . that the Principal Sum

would be paid in the event that his wife dies of accidental causes." Complaint, ¶ 23. Yet, Mr.

Franklin has offered no evidence of any representation on the part of GECA that it would pay benefits other than as set forth in the terms of the Policy itself.  *See* Plaintiff's Responses to Interrogatories, ¶¶ 9, .  Those terms clearly and unambiguously provide that the "Principal Sum" applicable to a claim for a loss sustained by a spouse is sixty percent 60% of the "Contributory Principal Sum," subject to a reduction of fifty percent (50%) in the case of one who is more than seventy (70) years old. If Mr. Franklin was confused by the Policy language, it was his responsibility to seek clarification at the time the Policy was issued. *See Fay*, 723 A.2d at 715. His failure to read or understand the Policy does not give rise to a claim for fraudulent misrepresentation. *Barrer v. Metropolitan Life Ins. Co.*, 151 F. Supp. 2d 617, 622 (E.D. Pa. 2001). GECA paid benefits precisely as the Policy terms provide, and thus precisely as it represented.

The terms of the Policy clearly and unambiguously specify the amount payable upon the death of Mr. Franklin's wife. Mr. Franklin has presented no "clear, precise and convincing" evidence of detrimental reliance on any false representation that he would recover benefits beyond those for which the Policy expressly provides. Accordingly, GECA is entitled to summary judgment in its favor on the Consumer Protection Law claim. *See Fay*, 723 A.2d at 715; *Barrer*, 151 F. Supp. 2d at 621; *Fisher*, 39 F. Supp. 2d at 512-13, 515-16.

III.    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court should grant the Motion and issue a judgment as a matter of law in favor of defendant GECA and against plaintiff Roscoe Franklin, and should dismiss the Complaint in its entirety with prejudice.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By: _____

Heather E. Rennie, Esquire
Eric M. Fink, Esquire
1515 Market Street, 9th Floor
Philadelphia, PA 19102

Attorneys for Defendant

Dated:  February 17, 2003

M0379033.DOC