```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


                                    :
ROSCOE FRANKLIN                     :
          Plaintiff,                :
                                    :
     v.                             :    NO. 02-CV-3359
                                    :
G E FINANCIAL ASSURANCE             :
COMPANY                             :
          Defendant.                :
                                    :
```

### BRIEF IN SUPPORT OF PLAINTIFF S MOTION TO COMPEL ANSWERS TO PLAINTIFF S AMENDED INTERROGATORIES AND REQUEST FOR PRODUCTION - SET I

Plaintiff hereby submits the following brief in support of his Motion to Compel the defendant, General Electric Capital Assurance Company ( GE ), to answer fully and produce documents in response to Plaintiff s Amended Interrogatories and Request for Production - Set I.

### ARGUMENT

This case involves a dispute over the amount of a benefit payable on the accidental death section of a life insurance policy for which plaintiff is an insured and defendant is the insurer.  GE admits that it is liable for payment of a benefit pursuant to the policy.

While admitting liability on the benefit, GE alleges that benefit due on the policy is only $9,900, which they have paid. Plaintiff alleges the amount due is at least $34,100.

The dispute in the case centers around certain policy

language relating to the benefit and the issue is how that language should be interpreted, i.e. whether reductions from a separate section of the policy should be applied.  The separate   Accidental Death and Dismemberment Benefit   provision promises 100% coverage for   loss of life.

Accordingly, plaintiff served the defendant with sixteen amended interrogatories on September 27, 2002 regarding the development and interpretation of the language in the policy. (Interrogatories attached to Motion as Exhibit A).  The defendant objected to all interrogatories except 14 and 16 with the same boilerplate objection as to relevance and scope. (Answers and Objections attached to Motion as Exhibit B).

Pursuant to F.R.C.P. Rule 33(b)(3), parties must answer all interrogatories that seek relevant information within 30 days.  Relevant information need not be admissible at the trial; Interrogatories seek relevant information if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. F.R.C.P. Rule 26(b)(1).  All of the interrogatories at issue sought relevant information, generally concerning the history of the policy language in dispute.

Interrogatory 1 states:

> Identify and describe in detail the manner in which the   Benefit Provision ADD - Accidental Death and Dismemberment Benefit   sectionof your policy (attached hereto as Exhibit A) was developed and approved.

This is clearly aimed at discovering information from which

the plaintiff can prove his claim because it goes to the interpretation of the language.  It is appropriate to review the history of the drafting of a contract to determine the proper interpretation.   Motor Coils Manufacturing v. American Insurance Co., 308 Pa.Super. 568, 454 A.2d 1044 (1982)(if a contract provision is ambiguous, extrinsic evidence can be properly admitted in an attempt to resolve the ambiguity); *See* Osborne v. Carmichaels Mining Machine Repair, Inc., 427 Pa.Super. 159, 628 A.2d 874 (1993)(stating when intent of parties is unclear as expressed in the language of the agreement, extrinsic evidence may be admitted to resolve ambiguous terms); CHITTY ON CONTRACTS, ¶¶ 12-104 (where the wording or phraseology is susceptible of more than one meaning, or if an ambiguity emerges when it is sought to apply the language of the document to the circumstances under consideration the  court is entitled (and, indeed, bound) to enquire beyond the language of the document and see what the circumstances were with reference to which words were used, and the object appearing from those circumstances which the person using them had in view.  ).

    Here, different sections of the contract conflict such that the plaintiff interprets the benefit to be worth at least $31,000 and the defendant argues that it is only required to pay $9,900. By showing how the language was developed, the discovery may show what the appropriate interpretation of the language is and if the

interpretation advanced by GE is consistent with the evidence. Moreover, in Sunbeam Corp. v. Liberty Mut. Ins. Co., 566 Pa. 494, 781 A.2d 1189 (2001), the Pennsylvania Supreme Court held that, under the law of contracts, evidence of regulatory approval, industry custom, and trade usage is always relevant and admissible. There, the Court expressly held that an insurance company may be estopped, under regulatory estoppel, from alleging an interpretation of policy language which is at odds with the interpretation that it represented to the Pennsylvania Insurance Department when submitted for approval. Sunbeam, 781 A.2d at 1192. Any documents showing the development of the language, particularly with reference to those submitted to the Insurance Department are directly relevant to this case.

Additionally, the Complaint also alleges a count for bad faith. The development and approval of the language used in the specific policy provision at issue may show that the language was designed to confuse or deceive insureds and make them believe that the policy tendered would pay them more than GE actually paid.

Interrogatory 2 states:

> Did any Pennsylvania state agency approve and/or review the policy language in Exhibit A?  If so, and unless the answer is an unqualified negative, please identify each such agency, the responsible official(s), and identify and produce all documents constituting and/or associating with all such submissions, reviews, and/or approvals.

Likewise, interrogatory 15 asks:

> Did any Pennsylvania state agency approve and/or review the policy language relied on in your answer to interrogatory 14? If so, and unless the answer is an unqualified negative, please identify each such agency, the responsible official(s), and identify and produce all documents constituting and/or associating with all such submissions, reviews, and/or approvals.

As held in <u>Sunbeam</u>, the representations to and recommendations from the reviewing agency would be relevant to determining whether the defendant was acting in bad faith and what the proper interpretation of the disputed language is. If the language at issue was reviewed by the state agency, that evidence would show both how the interpretation of the language was presented to the agency and what concerns the agency had about the language.

<u>Sunbeam</u> is on point here; this interrogatory is directly relevant to the interpretation of the insurance contract. <u>Sunbeam</u>, 781 A.2d at 1192. The contract is wholly written by the insurer and intentionally marketed to persons who are not sophisticated in the interpretation of complex legal language. As shown above, the process of drafting the language is relevant to its interpretation because the language is open to multiple interpretations.

Interrogatory 3 states:

> Please state whether the policy language attached hereto as Exhibit A is and/or was used in policies other than employer group policies. Unless the answer is unqualified no, please describe the types of

    policies (markets and time framing, in which such
    policies language was sold).

    Beyond its boilerplate objection, GE states non-responsively that the policy language has never been used for any employer group policies. The question is clearly relevant because it will show what the policy's target demographics were and the relative sophistication of the intended insureds. This is relevant to the interpretation of the language and whether the language was developed in bad faith and with the intent to deceive.

    Interrogatory 4 states  Please describe in detail all communications with Scott Paper Federal Credit Union, from 1980 (inception of policy) whichever was earlier, to the present. (October 1, 1991).  The policy at issue was purchased through Scott Paper Federal Credit Union. The communications between GE and the Credit Union are key to disclosing the intended meaning of the language at issue. (*See* Page 3, Supra.)

    Interrogatory 5 states:

    Please identify all representatives of Scott Paper
    Federal Credit Union with whom GE (including its
    predecessors) had any communications relating to the
    policy, at any time from 1980 or the inception date,
    whichever is earlier, to the present.

    The employees of the Credit Union whom GE communicated with regarding this policy are likely to have knowledge of the terms of the policy, the bargain between the credit union and GE and the development of the policy for the credit union insureds.

They are absolutely relevant.  Moreover, the defendant is expressly mandated to provide such information without interrogatory by F.R.C.P. Rule 26(a)(1)(A) which states in relevant part:

> a party must, without awaiting a discovery request, provide to other parties:
>
> (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

The names of these persons should have been disclosed with the defendant s self executing disclosure, let alone after requested by interrogatory.

Interrogatory 6 states  Please state the date when the language attached as Exhibit A became a part of any GE Capital (including its predecessors) policy.   Interrogatory 7 states   Please state whether the language is still enforced in any policies other than for Scott Paper Federal Credit Union.

Interrogatories 6-7 seek information relevant to whether the defendant recognized the ambiguity in its policy, whether it has changed its position as to interpretation of the language and (combined with the answers to other interrogatories) whether its declared interpretation is made in bad faith.

Interrogatory 8 states  Please identify all cases in which GE Capital (including its predecessors) has rejected full benefit

coverage under this policy language attached hereto as Exhibit A.  Relatedly, interrogatory 9 asks to   Please identify each and every dispute (including the names and addresses of the disputants/claimants in regard to each such dispute).

Interrogatories 8-9 seek to identify whether other persons have been victimized by the defendant s drafting and interpretation of the policy.  Moreover, as persons likely to have discoverable information, disclosure of such persons is mandated by F.R.C.P. 26(a)(1)(A).

Interrogatories 10-13 request information relevant to the litigation history. Interrogatory 10 asks:

> With respect to each dispute identified in the prior interrogatory, and the extent not included in prior interrogatory, please identify all litigation in which the application and/or interpretation of the language in Exhibit A (and/or any such language and/or Exhibit A) was involved.

Interrogatory 11 states   Please identify each lawsuit in which the interpretation and/or application of Exhibit A was disputed and/or involved.  Identification includes court term and number, names of parties, and the court involved.   Twelve asks   Please state the outcome of each litigation and/or other dispute identified in all of the prior interrogatories   and interrogatory 13 asks   Please state all cases in which GE Capital has been held liable for punitive damages and/or for bad faith.

Interrogatory 10 through 13 are directly relevant.  If the issue as to the interpretation of this language has already been

decided, that determination may have bearing on how the Court should interpret the language in this case. Additionally, if this language has been repeatedly litigated it supports the plaintiff's position that the language requires payment of 100% of the principle sum and/or is ambiguous. Moreover, if the defendant is persisting with its objection despite adverse decisions it is clearly acting in bad faith relevant to Counts II and III. These interrogatories clearly seek relevant information.

Defendant answered interrogatories 14 and 16 "subject to the general objections and reservations." Interrogatory 14 states:

> Please state and describe in detail the exact reasons why you contend that the plaintiff is not entitled to full policy coverage. If you contend plaintiff is entitled to full policy coverage, please explain in detail why $9,900.00 dollars constitutes full policy coverage, and/or what you have not paid full policy coverage, as the case may be.

Interrogatory 16 states "Please identify all personnel involved in the processing of the claim of plaintiff."

If a party objects to an interrogatory, the objection must be specific. F.R.C.P. 33(b)(4); <u>Transamerica Ins. Co. v. Thomas M. Durkin & Sons, Inc.</u>, 1990 WL 167969, 2 (E.D.Pa. Oct 30, 1990) ("General objections to interrogatories are not proper."); <u>Hoffman v. Wilson Line</u>, 7 F.R.D. 73, 74 (E.D.Pa. 1946)(same). To the extent that the defendant refused to fully answer 14 and 16 and/or identify any personnel involved in the processing of the

plaintiff s claim, such objection is improper.  Moreover, such information is expressly required to be disclosed without interrogatory by F.R.C.P. 26(a)(1)(A).

Counsel for Plaintiffs wrote Heather Rennie, Esquire, counsel for defendant who signed the response, and requested that she reconsider her position. (Attached to Motion as Exhibit C). By letter of Eric M. Fink, Esquire, dated October 30, 2002, defendant refused, stating that it would stand by the objections. (Attached to Motion as Exhibit D).  As shown above, defendant s objections are without merit and in violation of the Federal Rules of Civil Procedure.

## CONCLUSION

For the foregoing reasons, the Court should order defendant to fully answer all interrogatories and produce all requested documents in response to Plaintiff s Amended Interrogatories and Request for Production of Documents.

Respectfully Submitted,

_____
ROBERT J. SUGARMAN
CARL W. EWALD
Counsel for Plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building

```
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500
```

Dated:  March 4, 2003