**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWER IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO COMPEL ANSWERS TO PLAINTIFF'S AMENDED**
**INTERROGATORIES AND REQUEST FOR PRODUCTION—SET I**

Defendant General Electric Capital Assurance Company[1] ("GECA"), by and through its

undersigned legal counsel, hereby submits its Answer in Opposition to Plaintiff's Motion to

Compel Answers to Plaintiff's Amended Interrogatories and Request for Production—Set I, and

in support thereof avers as follows:

1.       Denied as stated. It is admitted that this case involves a dispute over the

interpretation and application of an insurance policy ("Policy") issued by defendant, under which

plaintiff was an insured person.  Plaintiff's characterizations of the Policy are denied. The Policy

is a written document that speaks for itself.

2.   Denied as stated. Plaintiff's characterizations of the Policy are denied. The Policy is a

written document that speaks for itself.

3.   Denied as stated. Plaintiff's characterizations of the Policy and of defendant's

position with respect to this litigation are denied. By way of further response, defendant's

---

[1]       Plaintiff misstates the name of Defendant in the Complaint as GE Financial Assurance Company. For
purposes of this Motion for Summary Judgment, GE Capital Assurance Company does not dispute that it is the
entity named in the Complaint.

position is that plaintiff is entitled to payment of benefits only as provided under the express

terms of the Policy. The Policy is a written document that speaks for itself.

4.  Denied. By way of further response, the issue in this case is whether defendant

correctly, and in good faith, interpreted and applied the terms of the Policy as a whole.

5.  Denied as stated. It is admitted that plaintiff served defendant with interrogatories on

September 27, 2002. Plaintiff's characterizations of the interrogatories are denied. The

interrogatories are contained in a written document that speaks for itself.

6.  Denied as stated. It is admitted that, under Fed. R. Civ. P. 33(b)(3), a party must serve

answers or objections to interrogatories within thirty (30) days of service thereof.

7.  Denied as stated. It is admitted that the defendant asserted objections to the

interrogatories, including (but not limited to) objections as to the lack of relevance and overbroad

scope of the interrogatories. The plaintiff's characterization of those objections is denied. The

objections are contained in a written document that speaks for itself.

8.  Denied as stated. It is admitted that Fed. R. Civ. P. 26 governs the scope of discovery.

It is further admitted that interrogatories may seek information that is itself not admissible at

trial, but that appears reasonably calculated to lead to the discovery of admissible evidence.

9.  Denied.

10. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The

interrogatories are contained in a written document that speaks for itself.

11. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The

interrogatories are contained in a written document that speaks for itself.

12. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The

interrogatories are contained in a written document that speaks for itself.

13. Denied as stated. Plaintiff's characterizations of defendant's responses and objections to the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

14. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

15. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

16. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

17. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

18. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

19. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

20. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

21. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

22. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

23. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

24. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

25. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

26. Denied as stated. Plaintiff's characterizations of the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

27. Denied as stated. Plaintiff's characterizations of defendant's responses and objections to the interrogatories are denied. The interrogatories are contained in a written document that speaks for itself.

28. Denied as stated. Plaintiff's legal conclusions, and plaintiff's characterizations of defendant's responses and objections to the interrogatories are denied. By way of further response, it is averred that defendant's objections to the interrogatories were proper and properly stated.

29. Denied.

30. Denied as stated. It is admitted that counsel for plaintiff wrote to counsel for defendant concerning, among other things, defendant's responses and objections to the interrogatories. It is further admitted that the letter attached as Exhibit "C" to plaintiff's Motion to Compel is a true and correct copy of the letter from plaintiff's counsel. Plaintiff's characterizations of the letter are denied. The letter is a written document that speaks for itself.

31. Denied as stated. It is admitted that counsel for defendant responded, by letter dated October 30, 2002, to the previous letter from plaintiff's counsel concerning the interrogatories and other issues. It is further admitted that the letter attached as Exhibit "D" to plaintiff's Motion

to Compel is a true and correct copy of the letter from defendant's counsel. Plaintiff's

characterizations of that letter are denied. The letter is a written document that speaks for itself.

32. Denied.

**WHEREFORE,** Defendant GECA respectfully moves that the Court deny plaintiff's

Motion in its entirety.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By: _____

Heather E. Rennie, Esquire
Eric M. Fink, Esquire
1515 Market Street, 9th Floor
Philadelphia, PA 19102

Attorneys for Defendant

Dated:  February 17, 2003

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, I have today served a true and correct copy of the foregoing

Response to Plaintiff's Motion to Compel, and accompanying Brief in support thereof, via hand

delivery upon the following counsel of record:

> Robert J. Sugarman, Esquire
> 100 North 17th Street, 11th Floor
> Philadelphia, PA 19103
>
> **Attorney for Plaintiff**


_____
ERIC M. FINK

Dated:  March 18, 2003

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

## **ORDER**

   **AND NOW**, this ___ day of _____, 2003, upon consideration of the Plaintiff's

Motion to Compel Answers to Interrogatories and Request for Production, and Defendant's

response thereto, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the Plaintiff's

Motion is **DENIED**.

                                   BY THE COURT:


                                   _____
                                                                    J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No.  02-CV-3359 |
| | : | |
| GE Financial Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**DEFENDANT'S BRIEF IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO COMPEL ANSWERS TO PLAINTIFF'S AMENDED**
**INTERROGATORIES AND REQUEST FOR PRODUCTION—SET I**

**I.     STATEMENT OF THE CASE**

**A.     Procedural History**

Plaintiff Roscoe Franklin commenced this action with the filing of a complaint in the

Court of Common Pleas for Philadelphia County, Pennsylvania. Defendant GE Capital

Assurance ("GECA") filed a timely notice of removal to the U.S. District Court. Defendant

GECA then filed its Answer. The parties subsequently exchanged discovery. Mr. Franklin has

brought a Motion to Compel, asserting that the responses of GECA to interrogatories from Mr. Franklin were deficient. GECA hereby opposes that motion.

### B.  Factual Background

Mr. Franklin is an "Insured Person" under a group insurance policy issued by GECA ("Policy") to Sentry Federal Credit Union ("Credit Union").  The Policy consists of a series of written documents setting forth the terms and conditions of insurance coverage. The Policy provides accidental injury or death coverage for Credit Union members. (Carrillo Aff.[1] ¶¶ 3-7 and Exhibit "1" [GE00001-GE00028]; *see also* Complaint, ¶¶ 4-5 and Exhibit "A").

Mr. Franklin enrolled for non-contributory coverage under the Policy as a member of the Credit Union. Mr. Franklin also elected additional voluntary coverage under the "Family Plan," which also covered his wife (his sole dependent). (Carrillo Aff.,  ¶¶ 6, 7, 14, 15 and Exhibit "1" [GE00003, GE00004, GE00005, GE00018]).

The amount of benefits payable under the Policy depends on the "Principal Sum," of which there are two components. The "Non-Contributory Principal Sum" pertains to the coverage that a Credit Union member receives at no cost upon enrollment. The "Contributory Principal Sum" pertains to the coverage that a member elects under the Family Plan. In the case of a spousal claim (where there are no other covered dependents), the Policy expressly provides that the applicable principal sum is equal to sixty percent (60%) of the Contributory Principal Sum. Where a claim is for accidental death, one hundred percent (100%) of that amount (i.e. 60% of the Contributory Principal Sum) is payable. However, where the covered individual is

more than seventy years old, the benefit is "reduced to 50% of the benefits otherwise payable." Carrillo Aff. ¶¶ 8-13 and Exhibit "1" [GE00005, GE0009, GE00019, GE00020, GE00024]).

Mr. Franklin's wife died as the result of an accident on December 12, 2000. (GE00033 [Notice of Claim]). At the time of her death, she was more than seventy (70) years old. (*See* GE00033 [Notice of Claim]). The "Contributory Principal Sum" on the Policy was then $30,000. (Carrillo Aff., ¶ 17 and Exhibit "2" [GE000032]). The Principal Sum under the Policy for a loss sustained by Mr. Franklin's wife was therefore $9,000 (i.e. $30,000 x 60% for spousal loss x 50% for insured person over age 70). The benefit payable upon the death of Mrs. Franklin was 100% of that Principal Sum. In addition, GECA applied a Continuous Coverage Bonus of 10% to the total amount of coverage.[2] (Complaint, ¶ 9; Plaintiff's Response to Interrogatory No. 6; Carrillo Aff., ¶ 20). Accordingly, on July 12, 2001, GECA issued a check to Mr. Franklin in the amount of $9,900, together with an explanation of the benefit calculation. (Plaintiff's Response to Interrogatory No. 3; Carrillo Aff., ¶¶ 21-22 and Exhibit "3" [GE00035, GE00036]).

Notwithstanding the express terms of the Policy, Mr. Franklin contends that he was entitled to benefits in an amount equal to the total Principal Sum plus the Continuous Coverage Bonus, which he asserts amounts to $34,100.[3] (Complaint, ¶ 10; Plaintiff's Responses to

---

[1] "Carrillo Aff." Refers to the affidavit of Patricia Carrillo, which GECA has offered in support of its pending Motion for Summary Judgment in this case. A copy of the Carrillo affidavit, with attached exhibits, is appended hereto for the convenience of the Court.

[2] Under the express terms of the Policy, a 10% bonus should have applied only to the first $10,000 in coverage, which had been in effect since 1996. The bonus on the remaining $20,000, in effect only since 1998, should have been 5%. Consequently, the Continuous Coverage Bonus that Mr. Franklin received was actually greater than that to which he was entitled under the Policy. See Carrillo Aff. ¶ 20.

[3] In setting forth the basis for his computation of benefits allegedly payable, Mr. Franklin contends that the applicable Principal Sum was $31,000. (*See* Plaintiff's Response to Interrogatory No. 7). Mr. Franklin evidently fails to distinguish between the "Non-Contributory" Principal Sum, which pertains to the automatic coverage that he received as a Credit Union member, and the "Contributory" Principal Sum, which pertains to coverage under the Family Plan. (*See* GE00005, GE00019). In this regard, the clear and unambiguous Policy documents speak for themselves.

Interrogatories, ¶¶ 7, 8). He asserts claims against GECA for breach of contract, bad faith conduct by an insurer (42 Pa. C.S. § 8371), and unfair or deceptive trade practices (73 P.S. §§ 201-3 and 201-9.2).

GECA maintains that its payment of $9,900 represented the full amount of benefits payable on Mr. Franklin's claim under the terms of the Policy, and that it made no representation to Mr. Franklin that he would recover any benefits in excess of those for which the Policy itself expressly provides. Accordingly, GECA has fulfilled its contractual obligation, acted in good faith, and committed no unfair or deceptive practice.

### C.  Plaintiff's First Set of Interrogatories

Counsel for Mr. Franklin served counsel for GECA with a set of sixteen interrogatories on September 27, 2002. The interrogatories seek information concerning the drafting and adoption of the Policy language at issue; the review and approval of that Policy language by state agencies; the use of that language in policies other than the Policy at issue; communications between GECA and the Credit Union; and other disputes, involving other insured persons, covered under other policies.

Counsel for GECA concluded that nearly all of the interrogatories were objectionable. Among other grounds, counsel for GECA objected to the interrogatories because the information they sought was neither relevant to any of the issues in dispute, nor reasonably calculated to lead to the discovery of admissible evidence. GECA did provide substantive responses to the extent that the interrogatories sought relevant information and were not otherwise objectionable.

Upon receipt of GECA's answers and objections to the interrogatories, counsel for Mr. Franklin wrote to counsel for GECA raising questions as to certain of the responses. In reply,

counsel for GECA wrote to counsel for Mr. Franklin, endeavoring to elaborate on GECA's answers and to elucidate the objections. After sending that letter on October 30, 2002, defense counsel heard nothing further from plaintiff's counsel, on the subject of the interrogatories or otherwise. Concluding that plaintiff's counsel did not wish to pursue the matter, counsel for GECA then prepared and filed a Motion for Summary Judgment, on the basis of the discovery that had been completed. That Motion for Summary Judgment is now pending before the Court.

## II.    ARGUMENT

### A.  GECA Has Asserted Valid and Good Faith Objections to Plaintiff's Interrogatories, Which Seek Information That Is Neither Relevant Nor <u>Reasonably Calculated to Lead to the Discovery of Admissible Evidence</u>

The Federal Rules of Civil Procedure permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This Court has explained the standard of relevance under Rule 26: "While the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without limits. The facts and circumstances of a case determine and limit the relevancy of information sought in discovery." <u>Stabilus v. Haynsworth, Baldwin, Johnson & Greaves</u>, 144 F.R.D. 258, 265 (E.D. Pa. 1992) (internal citations omitted). Thus, where interrogatories seek information not pertinent to the facts and circumstances of the case at issue, a court will deny a motion to compel responses. <u>See</u> <u>Fidelity & Deposit Co. of Maryland v. McCulloch</u>, 168 F.R.D. 516, 525-26 (E.D. Pa. 1996); <u>North River Ins. Co. v. Greater New York Mutual Ins. Co.</u>, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995).

This case involves a dispute over the interpretation and application of the Policy. The legal issues at stake in this case are whether GECA breached its contract with Mr. Franklin, whether GECA fraudulently misrepresented the terms of coverage to Mr. Franklin, or whether GECA acted in bad faith in its handling of Mr. Franklin's claim for benefits. GECA has no obligation to answer interrogatories having no palpable bearing on any of those issues, and the objections that GECA has asserted to Mr. Franklin's irrelevant and overbroad interrogatories are therefore entirely proper.

Interrogatories No. 1 and 6 ask about GECA's development and adoption of the language in one section of the Policy. These questions have no bearing on any of Mr. Franklin's claims or GECA's defenses. Plaintiff's counsel attempts to justify these questions by suggesting that the process by which GECA developed and adopted that language may aid in its interpretation. That argument is misguided. Merely because the parties to a dispute differ in their interpretation of a contract does not render the contract ambiguous. Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 885 (Pa. Super. 2000); Sorbee Int'l. v. Chubb Custom Ins., 735 A.2d 712, 714 (Pa. Super. 1999); accord Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002); Barrer v. Metropolitan Life Ins. Co., 151 F. Supp. 2d 617, 621 (E.D. Pa. 2001). The interpretation on which Mr. Franklin relies in support of his breach of contract claim is untenable when the terms of the Policy are read in light of the entire document, as is appropriate with any contract. See Capek v. Devito, 564 Pa. 267, 767 A.2d 1050, 1050 (2001); Sorbee Int'l, 735 A.2d at 717; accord Frog Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). Because the Policy is not ambiguous, the drafting history is neither relevant nor admissible for purposes of contract interpretation. See Capek, 767 A.2d at 1050; Kelaco v. Davis & McKean Gen. P'ship, 743 A.2d 525, 528 (Pa. Super. 1999); accord Perry v. Sonic Graphic Sys., Inc., 94 F. Supp. 2d 616, 619 (E.D. Pa. 2000). In contrast to evidence of drafting history, evidence of industry custom or trade usage is admissible as a guide to the interpretation of a commercial contract, even where the language is not facially ambiguous. Sunbeam Corp. v. Liberty Mut. Ins. Co., 566 Pa. 494, 781 A.2d 1189, 1193 (2001). However, none of the interrogatories to which GECA asserted objections asks about industry custom or trade usage. Accordingly, the principle from Sunbeam on which plaintiff relies is simply off the mark.

Nor would information about the original drafting or adoption of the Policy terms be at all relevant to Mr. Franklin's claims for fraudulent misrepresentation and for bad faith. The process by which those terms came about has no bearing on whether the terms as they actually appear in the policy itself would likely have been deceptive to one in Mr. Franklin's position. See Fay v. Erie Ins. Group, 723 A.2d 712, 714 (Pa. Super. 1999) (explaining basis of fraudulent misrepresentation claim in context of insurance policy); accord Giangreco v. United States Life Ins. Co., 168 F. Supp. 2d 417, 423-24 (E.D. Pa. 2001). Nor is that history relevant to the reasonableness of GECA's interpretation of the Policy in determining the amount of benefits payable to Mr. Franklin. See J.H. France Refractories Co. v. Allstate Ins. Co., 534 Pa. 29, 626 A.2d 502, 510 (1993) (explaining standard for bad faith by insurer); accord Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

Interrogatories No. 2 and 15 (which appear to be duplicative) ask about regulatory review and approval of the Policy language. In defense of these interrogatories, plaintiff mistakenly relies on Sunbeam. Contrary to plaintiff's assertion, Sunbeam does not stand for the proposition that "evidence of regulatory approval … is always relevant and admissible." See Plaintiff's Brief at 4. Rather, the Pennsylvania Supreme Court simply held that, where an insurer makes representations to state regulatory authorities concerning the effect of a policy provision, the insurer is estopped from adopting a contrary position in litigation over the application of that provision. Sunbeam, 781 A.2d at 1192-93.

GECA recognizes that, under Sunbeam, evidence of representations to state regulatory authorities about the effect of the policy terms at issue here would be relevant to the claims and defenses in this case. GECA objected to plaintiff's interrogatories about regulatory approval, because they went far beyond the scope of what is relevant under Sunbeam, and were unduly

burdensome as stated. Counsel for GECA has conferred with counsel for plaintiff about this issue, and has agreed to serve a supplementary response to these particular interrogatories, limited in scope to the issue that <u>Sunbeam</u> declares to be relevant.

Interrogatories No. 3 and 7 ask whether certain language appears in any policies other than the one under which Mr. Franklin was covered. Mr. Franklin's claims turn solely on the Policy under which he is an insured person. The inclusion of any language in any other policy cannot possibly shed any light on the issues of whether GECA properly interpreted and applied *this* Policy, whether GECA fraudulently represented the terms of *this* Policy to Mr. Franklin, or whether GECA handled Mr. Franklin's claim under *this* Policy in good faith. Nor do the "target demographics" of GECA's policies have any bearing on the interpretation of the Policy, on Mr. Franklin's understanding of the Policy terms, or GECA's handling of Mr. Franklin's claim.

Interrogatories No. 4 and 5 ask about communications between GECA and representatives of the Credit Union concerning the Policy. This interrogatory is objectionable both on the grounds that it is vastly overbroad and that it seeks information that is neither relevant to this case. During the more than twenty-year time frame that these interrogatories cover, GECA and the Credit Union may have communicated about myriad matters having not even the remotest bearing on the issues here. It is unduly burdensome to require GECA to describe, and identify all parties to, all such communications. Moreover, even if these interrogatories were more narrowly tailored to address only communications concerning the disputed Policy terms, the question would still be objectionable. Again, the issues in this case are (1) whether GECA properly paid benefits to Mr. Franklin under the terms of the Policy, (2) whether GECA fraudulently misrepresented the Policy terms to Mr. Franklin, and (3) whether GECA handled Mr. Franklin's claim for benefits in good faith. GECA's communications with

persons other than Mr. Franklin are not relevant to any of those issues. As already noted, the

Policy here is unambiguous, and no extrinsic evidence of any "intended meaning" is necessary to

interpret its language. Moreover, again assuming that these interrogatories were more narrowly

directed at communications regarding the Policy terms in dispute, and assuming that such

communications  might be relevant here, GECA is aware of no such communications beyond the

written Policy documents themselves, which GECA has already identified and produced.

Interrogatories 8 -13 ask about other cases involving disputes over insurance coverage.

As they are stated, these interrogatories are overbroad. As this Court has repeatedly recognized, a

party suing an insurer over alleged bad faith denial of coverage may not engage in a "fishing

expedition" by asking in general about other lawsuits involving coverage disputes. See Fidelity

& Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525-26 (E.D. Pa. 1996) (denying

motion to compel responses to interrogatories about prior coverage disputes); North River Ins.

Co. v. Greater New York Mutual Ins. Co., 872 F. Supp. 1411, 1412 (E.D. Pa. 1995) (same). A

party may not obtain discovery about prior litigation in coverage disputes involving different

facts and circumstances, merely by asserting that the information might reveal inconsistent

positions taken by the insurer, or might be relevant to whether the policy language in dispute is

ambiguous. Fidelity & Deposit Co. of Maryland, 168 F.R.D. at 525-26.

Nonetheless, GECA acknowledges that, were these questions more properly focused on

cases involving similar facts and circumstances to those here, information about those cases

might conceivably be pertinent to Mr. Franklin's claims.  Accordingly, reading Interrogatories

No. 8-13 to ask only about cases involving similar policy terms and factual circumstances,

GECA did in fact respond to these interrogatories, indicating that there has been no case, other

than Mr. Franklin's, in which any insured has disputed the interpretation or application of the

Policy terms at issue here under similar circumstances. Much as plaintiff's counsel might wish to paint a picture of a vast conspiracy by GECA to defraud hapless consumers, Mr. Franklin is, so far as GECA is aware, quite alone in his peculiar misreading of the Policy.

With respect to the remaining Interrogatories No. 14 and 16, GECA likewise provided complete and responsive answers. In response to Interrogatory No. 14, GECA explained in detail its calculation of the amount of benefits to which Mr. Franklin was entitled under the terms of the Policy. In response to Interrogatory No. 16, GECA identified the personnel involved in processing Mr. Franklin's claim for benefits, noting that neither of those individuals works for GECA today and that the company is unaware of their whereabouts. Once again, the fact that plaintiff's counsel may wish there were more to the story does not make it so.

A plaintiff may not use interrogatories to blow smoke or flash mirrors for the purpose of distracting attention from the lack of evidence in support of his claims. Rather, the only legitimate purpose of discovery is to seek evidence that is relevant to the claims and defenses at issue in a particular case. The interrogatories to which GECA objected do not meet that standard. To the extent that the interrogatories asked proper questions, GECA provided complete and responsive answers. Accordingly, there is no basis on which to compel GECA to expend its time, money and resources to provide any further response.

**B. Because Plaintiff's Counsel Did Not Make a Good Faith Effort to Confer With Defense Counsel Prior to Filing the Motion to Compel, Plaintiff is Not Entitled to Recover Expenses Pursuant to Fed. R. Civ. P. 37(a)(4)(A)**

When filing a motion to compel discovery responses, the moving party must certify that he "has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed. R. Civ. P. 37(a)(2)(A). A party filing a discovery motion without first making a good faith effort to confer may not recover its

expenses incurred in bringing the motion, even if that party prevails on the merits of the motion.

Fed. R. Civ. P. 37(a)(4)(A). Moreover, where a moving party does not confer in good faith, or

attempt to do so, a court may deny relief altogether. Tarkett, Inc. v. Congoleum Corp., 144

F.R.D. 282, 285-86 (E.D. Pa. 1992) (applying local court precursor to Fed. R. Civ. P. 37); accord

Ballou v. University of Kansas Med. Ctr., 159 F.R.D. 558 (D. Kan. 1994);

"A reasonable effort to confer," in compliance with Rule 37, "means more than mailing a

letter to opposing counsel." Williams v. Board of Comm'rs Wyandotte County, 192 F.R.D. 698,

700 (D. Kan. 2000); accord Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 172

(D. Nev. 1996) (finding exchange of faxes between counsel does not satisfy duty to confer

before filing Rule 37 motion). Rather, the rule contemplates an actual meeting or conference (in

person or by telephone) between counsel. Williams, 192 F.R.D. at 700; Shuffle Master, 170

F.R.D. at 171. The requirement of a conference serves the important purpose of avoiding the

waste of judicial resources that occurs "[w]hen the court must resolve a dispute that the parties

themselves could have resolved." Pulsecard, Inc. v. Discover Card Svcs., Inc., 168 F.R.D. 295,

302 (D. Kan. 1996).

In this case, counsel for Mr. Franklin filed a Motion to Compel without first attempting to

confer in good faith with counsel for GECA. While the Motion and accompanying brief recite an

attempt to resolve this dispute prior to the filing the Motion, the only evidence of any such effort

is a single letter from Plaintiff's counsel. Contrary to the requirements of Rule 37, Plaintiff's

counsel made no effort actually to engage in any direct conversation about the alleged

deficiencies in GECA's interrogatory responses. For that reason, the Court should deny the

Motion. Even if the Court should choose to entertain the Motion despite the failure of Plaintiff's

counsel to comply with the requirements of Rule 37, the Court should not award Plaintiff

recovery of any expenses, even if the Court were to rule in favor of Plaintiff on the merits of the

Motion. See Fidelity & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 527 (E.D. Pa.

1996) (denying attorney fees where moving party failed to resolve dispute without judicial

intervention).

III.    **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Motion to Compel in its

entirety.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
    & MELLOTT, LLC**


By:    _____
Heather E. Rennie, Esquire
Eric M. Fink, Esquire
1515 Market Street, 9th Floor
Philadelphia, PA 19102

Attorneys for Defendant

Dated: March 18, 2003

M0399021.DOC