```
SUGARMAN & MARKS
By: ROBERT J. SUGARMAN, ESQUIRE
Identification No: 03332
CARL W. EWALD, ESQUIRE
Identification No: 85639
100 N. 17th Street - 11th Floor     Attorneys for Plaintiff
Philadelphia, PA 19103
(215) 864-2500
```
_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| ROSCOE FRANKLIN | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 02-CV-3359 |
| | : | |
| GE CAPITAL ASSURANCE | : | |
| COMPANY | : | |
| Defendant. | : | |
| | : | |

### PLAINTIFF S BRIEF IN OPPOSITION TO
### DEFENDANT S MOTION FOR SUMMARY JUDGMENT AND IN
### SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff hereby submits this brief in opposition to
defendant, General Electric Capital Assurance Company s ( GECA ),
Motion for Summary Judgment and in support of plaintiff s Cross-
Motion for Partial Summary Judgment.

### STATEMENT OF THE FACTS

As a member of the Scott Paper Federal Credit Union the
plaintiff Roscoe Franklin purchased accident/life insurance
insuring himself and his wife, Blanche Franklin, through a group
policy issued by defendant. (Exhibit A, Carrillo Aff. ¶¶ 3-7;

Exhibit B, Policy at GE00001-GE00028; see also Answer, ¶¶ 4-5).
(At some point Scott Paper Federal Credit Union became Sentry
Federal Credit Union, but the policy was unaffected).

The policy provided $1,000 in  non-contributory  coverage
and offered Franklin  contributory  coverage up to $250,000.
(Exhibit A, Carrillo Aff., ¶¶ 6, 7, 14, 15 and Exhibit B, Policy
[GE00003, GE00004, GE00005, GE00018]).  Franklin contracted to
purchase  contributory  coverage under the  Family Plan,  which
also covered his wife  s life. (Exhibit A, Carrillo Aff., ¶¶ 6, 7,
14, 15 and Exhibit B [GE00003, GE00004, GE00005, GE00018]).  The
 contributory  coverage at the time of Blanche  s death was
$130,000. (Exhibit C, Franklin Affidavit at ¶ 13).  The history
of coverage was as follows:

Under the policy, in October 1991, Franklin accepted the
basic $1,000 in  non-contributory  coverage offered to him as a
credit union member and also contracted with defendant for
 contributory  coverage. (Exhibit C, Franklin Affidavit at ¶ 6).
He originally contracted for $50,000 in  contributory  coverage
and increased the  contributory  coverage to $100,000 on August
19, 1993. (Coverage Increase Request, Exhibit D; Exhibit C,
Franklin Affidavit at ¶ 7).

In late 1995, defendant offered additional coverage and
plaintiff accepted by way of an  enrollment form . (Enrollment

Form, Exhibit E; Exhibit C, Franklin Affidavit at ¶ 8).

At the time, Franklin already had $100,000 in  contributory coverage. (Exhibit C, Franklin Affidavit at ¶ 9).  On November 2, 1995 Franklin purchased $10,000 additional coverage by submitting the  enrollment form  . (Enrollment Form, Exhibit E; Exhibit C, Franklin Affidavit at ¶ 10-11).

Later, Franklin received a  Coverage Increase Request  form for the $10,000 of additional coverage and, on February 3, 1998, submitted that form to increase his total coverage to $130,000. (Coverage Increase Request, Exhibit F; Exhibit C, Franklin Affidavit at ¶ 12).

No other changes to the Policy were authorized by Franklin. (Exhibit C, Franklin Affidavit at ¶ 14). Therefore, after the 1998 increase, Franklin had $130,000 of additional coverage and $1,000 in basic coverage for a total of $131,000. (Exhibit C, Franklin Affidavit at ¶ 13). From October 1, 1991 through the present, Franklin always paid his premiums. (Answer ¶ 6).

Blanche Franklin died as the result of an accident on December 12, 2000. (Death Certificate, GE00033). At the time of her death, she was seventy-three years old. (See Notice of Claim; GE00033).

GECA is the insurer as successor in interest to AmEx Life Assurance Company (Answer ¶ 4) and is admittedly liable for

payment of the accidental death benefit.

Based on information provided by GECA, Franklin was confused
as to the coverage amounts.  This suit was based on the
  contributory   coverage of $30,000, i.e. the 1995 and 1998
increases admitted by GECA. (Exhibit A, Carrillo Aff., ¶ 17;
Exhibit B, policy GE 00032). Since suit was filed, plaintiff
learned that the coverage is actually $131,000.  A Motion to
Amend has been filed.

The policy and Certificate of Insurance provide for payment
of 100% of the   Principal Sum.    GECA argues that its payment of
$9,900 represented the full amount of benefits payable on the
$30,000 coverage based on other sections of the policy which
provide for reductions of benefits after age 70 and for spouses.

However, GECA  s argument at best creates an ambiguity.  The
  Accidental Death and Dismemberment Benefit    (  ADDB  ) section of
the policy is a stand alone section.  It states:

> Where an insured Person  s injury results in one of
> the losses stated below within 1 year of the date of
> the accident, <u>We will pay the percentage of the
> principal sum</u> stated for such loss. . . Only one
> benefit, whichever is greatest, will be paid for all
> losses which result from any one accident.
> Loss of Life ..........................100%
> (Exhibit B, GE 00009, 00020).

This language is crystal clear that GECA must pay 100% of
the    Principal Sum    for    Loss of Life  .

The Certificate of Insurance expressly defines the
Principal Sum  .  It states:

> Principal Sum
> Non-Contributory:
>       $1,000 Individual
> Contributory:
>       $50,000 Family (Exhibit B, GE 000018).

Hence, reading these two documents together, it is clear
that the   Principal Sum  , equal to the sum of the   Non-
Contributory   and   Contributory   coverages, is the payable
amount.

The   Principal Sum   is increased by the Continuous Coverage
Bonus (  CCB  ) section, which adds two 5% increases to the
Principal Sum. (Plaintiff  s Response to Interrogatory No. 6;
Exhibit A, Carrillo Aff., ¶ 20).

Therefore, Franklin was entitled to benefits in an amount
equal to the total Principal Sum plus the Continuous Coverage
Bonus, i.e. $144,427.50. (Complaint, ¶ 10; Plaintiff  s Responses
to Interrogatories, ¶¶ 7, 8).  Adjusting to the newly learned
coverage, this makes: Principal Sum ($131,000) + 1st 5%
Continuous Coverage Bonus $131,000 x .05 = $6,550) = $137,550 +
2nd 5% Continuous Coverage Bonus ($137,550 x .05 = $6,877.5) =
$144,427.50.  However, GECA paid only $9,900, asserting other
portions of the Policy negate the plain meaning of the ADDB.

Therefore, based on policy information provided by GECA,

plaintiff sued on a claim for the balance of the $31,000.  He alleged breach of contract, bad faith conduct by an insurer (42 Pa.C.S. § 8371), and unfair or deceptive trade practices under 73 P.S. §§ 201-3 and 201-9.2.

The Complaint had stated that $31,000 was the coverage amount, less the $9,900 received.  The proposed Amended Complaint applies the same interpretation to the alleged actual contract amount ($131,000).

Based on the $31,000 coverage assumption, GECA has moved for summary judgment stating it  has paid the full amount of benefits for which the Policy provides.  (Motion at ¶ 22, 25, 28).  GECA relies on other sections of the policy which state that a  Spouse is automatically insured for 50% [, 60% if no children,] of the contributory Principal Sum which applied to the Insured on the date of the accident  and that the benefits which are payable  as a result of an accident which occurs on or after the date such person attains 70 years of age shall be reduced to 50% of the benefits otherwise payable.  GECA ignores the plain meaning of the contract language relied on by plaintiff.

Plaintiff now cross-moves for partial summary judgment on Count I - Breach of Contract because, on the facts admitted by GECA, it is clear that the policy requires payment of 100% of the principal sum under the ADDB section, or in the alternative, that

ambiguity requires the same result.

## **STANDARD OF REVIEW**

Summary judgment is proper only if  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.   F.R.C.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The burden is on the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,  which it believes demonstrates an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; LaRose v. Philadelphia Newspaper, Inc., 21 F.Supp.2d 492, 497 (E.D.Pa. 1998).

In deciding a motion for summary judgment, the Court must consider the evidence in the light most favorable to the non-moving party.  Anderson v. Liberty, Inc., 477 U.S. 242, 255 (1986).

**ARGUMENT**

**I.   JUDGMENT FOR BREACH OF CONTRACT SHOULD BE ENTERED FOR PLAINTIFF BECAUSE THE TERM   PRINCIPAL SUM   IS CLEAR OR, IN THE ALTERNATIVE, BECAUSE ANY AMBIGUITY MUST BE RESOLVED IN HIS FAVOR.**

GECA  s Motion for Summary Judgment should be denied and Franklin  s Cross Motion should be granted.  The plain language of the policy clearly states that the benefit payable for loss of life is 100% of the principal sum,   the greatest benefit  . (Exhibit B, GE 00009, 00020).  In the alternative, if the policy language is not clear, then Franklin is entitled to judgment because insurance contracts are, as a matter of law, interpreted in favor of the insured against the insurer. <u>Bateman v. Motorists Mut. Ins. Co.</u>, 527 Pa. 241, 590 A.2d 281 (1991).

**A.   THE PLAIN LANGUAGE OF THE POLICY UNAMBIGUOUSLY STATES THAT THE BENEFIT PAYABLE FOR LOSS OF LIFE IS 100% OF THE PRINCIPAL SUM.**

The Court should grant partial summary judgment in favor of the plaintiff because the plain language of the Policy means that he is entitled to 100% of the   Principal Sum  .  The law is very well established that:

> When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. <u>Richmond v. Prudential Property and Casualty Insurance Company</u>, 789 A.2d 271, 274 (Pa.Super. 2001).

"Where terms are not defined, [the court] must construe the

words in accordance with their natural, plain, and ordinary

meaning." Id.

Where provisions of a contract of insurance are in conflict,

the provision or interpretation most favorable to the insured

will be adopted. Potter v. Reliance Mut. Life Ins. Co. of

Illinois, 21 Pa. D. & C.2d 603, 1960 WL 6300 (Pa.Com.Pl., 1960)

(Where terms of the certificate and the master policy conflict,

the construction which is most favorable to the individual holder

will be adopted); Kirkpatrick v. Boston Mut. Life Ins. Co., 393

Mass. 640, 648, 473 N.E.2d 173, 178 (Mass. 1985)(same); Davis v.

Crown Life Ins. Co., 696 F.2d 1343, 1345 (11th Cir.1983) (same

applying Florida law); Life Ins. Co. v. Lee, 519 F.2d 475, 478

(6th Cir.1975) (same applying Tennessee law); Lecker v. General

American Life Ins. Co., 55 Hawaii 624, 632, 525 P.2d 1114 (1974);

Davey v. Louisiana Health Serv. & Indem. Co., 357 So.2d 1170,

1174-1175 (La.App.1978);  Equitable Life Assurance Soc'y v.

Wagoner, 269 So.2d 747, 748 (Fla.Dist.Ct.App.1972); Exstrum v.

Union Cas. & Life Ins. Co., 167 Neb. 150, 160, 91 N.W.2d 632

(1958).

Moreover, a  certificate issued to an individual under a

group insurance policy is as much a part of the insurance

contract as the master contract.  Potter, 21 Pa. D. & C.2d 603,

citing Turley v. John Hancock Mutual Life Insurance Company, 315

Pa. 245 (1934).

Here, the express language of the Certificate and the Policy was that, if Franklin or his wife were to lose their life due to an accident, the surviving spouse would receive 100% of the Principal Sum, and two continuous coverage bonuses.

The Accidental Death and Dismemberment Benefit section of the policy clearly and unambiguously states:

> Where an insured Person s injury results in one of the losses stated below within 1 year of the date of the accident, <u>We will pay the percentage of the principal sum</u> stated for such loss. . . Only one benefit, whichever is greatest, will be paid for all losses which result from any one accident.
> Loss of Life ..........................100%
> (Exhibit B, GE 00020).

100% is unambiguous and unambiguously relates to the principal sum. Thus, under the clear language of the Policy, Franklin is entitled to 100% of the Principal Sum for the loss of Blanche Franklin s life.

The Certificate of Insurance expressly quantifies the Principal Sum . It states:

> Principal Sum
> Non-Contributory:
> $1,000 Individual
> Contributory:
> $50,000 Family (Exhibit B, GE 000018).

Thus, the Principal Sum is the sum of the non-contributory and the contributory coverage amounts.

Moreover, the policy expressly states that it will pay the greatest   benefit for   any one accident.   (GE 00020). Therefore, if there is any conflicting language, according to the clear and unambiguous language of the Policy, the plaintiff is entitled to the sum of the non-contributory and the contributory coverage, the defined principal sum.

Finally, as admitted by defendant, Franklin is also entitled to two 5% continuous coverage bonuses (Exhibit A, Carrillo Aff. ¶ 20; GE 000010).

Instead of complying with the plain meaning of the Policy, GECA argues that the   Principal Sum   should be discounted by two separate, conflicting sections of the policy, ignoring its own above quoted language (at page 10).

First, it argues that the principal sum should be reduced by 40% because Blanche Franklin was a spouse under the   Family Plan Section of the Policy.

The   Family Plan   section of the policy is a separate section from the ADDB provision.  It states:

> If the insured has made application for the
> Family Plan   and paid the required premium therefor,
> then his or her Spouse is automatically insured for 50%
> of the contributory Principal Sum which applied to the
> Insured on the date of the accident.  If there are no
> insured children on the date of the accident, this
> percentage is increased to 60%.  The Principal Sum for
> each insured child is 20% of the contributory Principal
> Sum which applied to the Insured on the date of the

accident.  If there is no insured spouse on the date of the accident this percentage is increased to 25%. (Exhibit B, GE 000005).

This provision is simply inapplicable to the ADDB section. To enforce it as argued by GECA would contradict the plain meaning of the ADDB which requires payment of 100% of the Principal Sum.

Moreover, the policy that Franklin purchased does not state that the spouse is not fully insured and, therefore, this interpretation (which is not based on the express language in the policy) is contradicted by the clear statement that loss of life is compensated by paying 100% of the  Principal Sum.

This provision does not change or specify the Principal Sum for the spouse.  It simply states that the Spouse will be automatically insured for 60% of the Principal Sum for accident claims.

This conclusion is highlighted by the fact that, in contrast, the same provision expressly does modify the defined  Principal Sum  for  each insured child . It states  The Principal Sum for each insured child is 20% of the contributory Principal Sum.  Clearly, if the policy drafters intended to modify the spouse s Principal Sum, they would have done so as they did for the children.  By not modifying the principal sum for spouses, the language is clear that there is no modification.

Moreover, the language as to spouses is at best (for defendant) unclear.  It could mean that the spouse is insured at 60% while the application is pending.  Moreover, the ADDB provision clearly states that loss of life is paid at 100% of the principal sum, and this provision does nothing to alter that and Franklin  s expectation that he was purchasing full insurance for both himself and Mrs. Franklin was reasonable.

It is black letter law that   any ambiguity in the written words will be construed liberally in favor of the insured and against the insurer.  <u>Collister v. Nationwide Life Ins. Co.</u>, 479 Pa. 579, 593-594, 388 A.2d 1346, 1353 (Pa. 1978); <u>Burne v. Franklin Life Ins. Co.</u>, 451 Pa. 218, 226-27, 301 A.2d 799, 804 (1973).  If the language of the application when so read, indicates an intent on the part of the insurer to provide insurance, the law is that   such benefits will be awarded by the court.  <u>Collister</u>, 388 A.2d at 1353.

GECA argues, based on a 1996 rider to the Policy, that a childless spouse  s Principal Sum is only worth 60% of the contributory Principal Sum. (Exhibit B, GE 000024).  GECA alleges that this rider, dated five years after Franklin purchased the insurance policy, reduces the benefits paid on the death of the spouse by changing the spouse  s Principal Sum.  However, GECA cannot unilaterally reduce the coverage that Franklin purchased.

The Pennsylvania Supreme Court resolved this issue in
<u>Tonkovic v. State Farm Mut. Auto. Ins. Co.,</u> 513 Pa. 445, 521
A.2d 920, 924 (Pa. 1987).  It held that a provision that was
unilaterally inserted subsequent to application by insured and
acceptance of premium payment by agent for insurer, was not
binding on insured and did not enable insurer to deny disability
coverage.   It required that for an insurer to unilaterally
change a policy, the insurer would have to make   an affirmative
showing that insured was notified of, and understood the change,
regardless of whether insured read the policy.  *Id.*

GECA has not presented any evidence that these changes were
ever even received by Franklin, let alone any evidence that he
understood that GECA was unilaterally purporting to reduce the
coverage for his spouse, or agreement to do so.  Therefore, GECA
has failed to, and in fact cannot, meet its burden and cannot
argue from unilateral changes to the policy.

The second provision that GECA contends reduces the benefit
is the   Benefit Reduction   provision, also not in the ADDB
section.  It states:

> The benefits to be paid under the Policy for loss
> sustained by an Insured Person as a result of an
> accident which occurs on or after the date such person
> attains 70 years of age shall be reduced to 50% of the
> benefits otherwise payable.  (Exhibit B, GE 000005).

This provision does not apply because, like the spouse

provision, the express representation of the Accidental Death and Dismemberment Benefit provision which promises that GECA will pay 100% of the Principal Sum in the event of accidental death, is controlling.  Moreover, tacking on multiple deductions is directly contrary to the policy provision that it will pay the greatest  benefit for a single accident.

Therefore, while the amount of the contributory coverage is in dispute, as between $30,000 and $130,000, there is no material issue of fact relating to the policy language, and partial summary judgment should be entered in favor of plaintiff for 100% of the sum of the non-contributory and the contributory coverage, i.e. the Principal Sum, as that amount is determined at trial, and two continuous coverage bonuses of five percent.

**B.   IF THE POLICY LANGUAGE IS NOT CLEAR, FRANKLIN IS ENTITLED TO JUDGMENT BECAUSE INSURANCE CONTRACTS ARE, AS A MATTER OF LAW, INTERPRETED IN FAVOR OF THE INSURED AGAINST THE INSURER.**

In the alternative, if the terms of the policy do not clearly state that Franklin is entitled to 100% of the sum of the non-contributory and the contributory coverage, then the Policy is ambiguous.  Patterson v. Reliance, 332 Pa.Super. 592, 596, 481 A.2d 947, 949 (Pa.Super 1984)(A policy provision is ambiguous if reasonably intelligent persons, considering it in the context of the policy as a whole, would honestly differ as to its meaning).

This also warrants summary judgment for the plaintiff.

Musisko v. Equitable Life Assurance Society, 344 Pa.Super. 101, 106, 496 A.2d 28, 31 (1985).  In Musisko the Pennsylvania Superior Court held that:

> it is a fundamental principal of interpretation of insurance contracts that if the language of a policy prepared by an insurer is ambiguous, obscure, uncertain, or susceptible to more than one construction, courts will interpret it most strongly against the insurer and accept the construction most favorable to the insured.

Franklin s reading is directly supported by the decisions of the Pennsylvania Supreme Court.  These decisions have repeatedly held that the  proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.  Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55; Tonkovic v. State Farm Mutual Automobile Insurance Co., 513 Pa. 445, 521 A.2d 920 (1987); Beckham v. Travelers Ins. Co., 424 Pa. 107, 117-18, 225 A.2d 532, 537 (1967); see also Dibble v. Security of America Life Ins. Co., 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (Pa.Super.,1991).   Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.  Collister, 388 A.2d at 1353.

In Collister the Supreme Court held:

> Through the use of lengthy, complex, and

cumbersomely written applications, conditional
receipts, riders, and policies, to name just a few, the
insurance industry forces the insurance consumer to
rely upon the oral representations of the insurance
agent. Such representations may or may not accurately
reflect the contents of the written document and
therefore the insurer is often in a position to reap
the benefit of the insured's lack of understanding of
the transaction. 388 A.2d at 1353-1354.

Even if this interpretation is not clear and unambiguous, it
is certainly is reasonable, and was Franklin s interpretation.
Thus, if the Court finds that Franklin s interpretation is not
the only possible interpretation, Franklin is still entitled to
judgment because insurance contracts must be interpreted in favor
of the insured.

Moreover, the defendant admits that the policy is so
confusing that the defendant itself interpreted it differently
from its own lawyers, such that the defendant s lawyers now argue
that GECA paid the plaintiff too much. (Brief at 3, n 1).
Apparently, the defendant itself is not sure how the other
provisions of the Policy affect the ADDB section.

In applying the continuous coverage bonus, GECA admits that
Franklin was entitled to two 5% continuous coverage bonuses.
However, the continuous coverage bonus provision fails to explain
how the bonuses are to be applied.  The language says the insured
is entitled to two 5% bonuses however; the defendant only applied
a single 10% bonus.  Defendant now argues that the defendant

itself misunderstood the bonus and should have applied two
separate bonuses, one for 10% on $10,000 and a second for 5% on
$20,000. (Brief at 3, n. 1).  If even the defendant is confused
by the policy, the policy is not   clear and unambiguous.    It is
ambiguous at best.  Ambiguity must be resolved in Plaintiff  s
favor.

Therefore, the Court should enter judgment in favor of
plaintiff for breach of contract as a matter of law.


## II.    THERE ARE MATERIAL ISSUES OF FACT THAT MUST BE RESOLVED BY THE JURY.

While the Complaint sought full payment of the $31,000 that
GECA stated was the coverage amount, new evidence found through
discovery now shows that the coverage amount was actually
$131,000.  Accordingly, plaintiff has moved to allow leave to
Amend the Complaint to reflect the new evidence which supports
this claim and demand the actual coverage amount of the policy.
This issue is therefore indeterminate at this time.

GECA  s statement of the policy coverage is based on the
actions of its agent, Progeny Marketing Innovations, Inc., in
unilaterally, and without authority or notice, purporting to
reduce Franklin  s policy coverage from $100,000 to $10,000,
allegedly in response to an   enrollment form   which Franklin

submitted to <u>increase</u> his coverage by $10,000.

However, Franklin never requested any such reduction.  He had received a form from defendant in 1995 which referred to additional coverage, by way of an  enrollment form  . (Exhibit C, Franklin Aff. at 8-10).  Since he wished to purchase more coverage, he submitted the  enrollment form  on November 2, 1995, and purchased an additional $10,000 as stated on the form. (Exhibit C, Franklin Aff. at 10).

At the time, Franklin already had the $100,000.00 policy.

On February 2, 1998, Franklin elected an increase in coverage to increase the  additional  coverage from $10,000 to $30,000.  (Exhibit C, Franklin Aff. at 12).  Therefore, Franklin had a total of $130,000 of  contributory  coverage.  (Exhibit C, Franklin Aff. at 13).

Plaintiff  s Motion for Leave to Amend seeks to add these facts to the Complaint.

Summary Judgment may only be entered if  there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.   F.R.C.P. 56(c);<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  These facts make it clear that there may be a factual dispute as to the amount of coverage.

The basis of GECA  s Motion is its argument that it   has fully performed its contractual obligation, by paying Mr.

Franklin the entire sum to which he is entitled under the terms of the Policy.    (Motion at ¶ 22).  Clearly, there are disputed issues of fact as to amount of coverage.  Such issues are directly material to whether GECA has paid Franklin the entire sum to which he is entitled and must be resolved by the jury.

## III. DISPUTED ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE DEFENDANT ACTED IN BAD FAITH

Count II is a statutory claim for bad faith by an insurer. Under Pennsylvania law, " bad faith  is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.  Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742 (3rd Cir. 1999). Even if such  refusal is not fraudulent; it imports dishonest purpose and means breach of known duty (i.e., good faith and fair dealing) through some motive of self-interest or ill will.  Woody v. State Farm Fire and Cas. Co., 965 F.Supp. 691 (E.D.Pa. 1997) citing Terletsky v. Prudential Property & Casualty Insurance Co., 437 Pa.Super. 108, 125, 649 A.2d 680, 688 (Pa.Super. 1994).

GECA argues that it is entitled to summary judgement because it believes the evidence does not show  that GECA acted unreasonably and did so knowingly or with reckless disregard. (Brief at 11).  Throughout its brief it relies heavily on Klinger v. State Farm Mut. Auto Ins. Co., 895 F. Supp. 709, 712-13 (M.D.

Pa. 1995), aff d 115 F.3d 230 (3d Cir. 1997), yet conveniently
ignores its holding here.  The defendant in <u>Klinger</u> raised a
similar argument in its Motion for summary judgment and the Court
held that summary judgment must be denied where  a jury might
conclude  that defendant acted in bad faith.*Id.*

Here, the defendant induced Franklin to purchase an
insurance policy which is predatory.  (Exhibit H, Plaintiff  s
Answer to Defendant  s interrogatory ¶ 8).  Although the policy
clearly states that he is entitled to 100% of the principal sum,
the insurance company has refused to pay the full principal sum.
Under Pennsylvania law GECA is clearly liable.  The defendant has
no reasonable basis for denying full coverage and should have
paid its full obligation as required by the plain language of the
Policy.  GECA know that Franklin is entitled to a greater benefit
than that which they have paid and have refused to pay.  The
documents which support Franklin  s claim came from GECA  s files.
(Exhibits B, D, E, F).  Yet GECA has decided to ignore them.

Moreover, the evidence shows that GECA  s agent, Progeny
Marketing Innovations, Inc., unilaterally, and without authority
or notice, <u>reduced</u> Franklin  s policy coverage from $100,000 to
$10,000, allegedly in response to an  enrollment form  which
Franklin submitted to <u>increase</u> his coverage by $10,000.  (Exhibit
G, Deposition of Betty Stucky at 29-30).  Thus, in refusing to

pay more than $9,900, GECA is knowingly relying on its unilateral and unauthorized breach of Franklin s policy without any notice. Franklin was told his coverage was increased (Exhibit C, Franklin Aff. at 10-13), but defendant illegally and secretly used the document to decrease his coverage.

GECA s bad faith is illustrated by how, when Franklin requested policy information after his wife s death, GECA told him that his policy was only for $30,000  contributory  coverage and continued to disguise its unilateral and unauthorized reduction.  These facts show that GECA acted in bad faith.

These disputes of material fact preclude summary judgment.

## IV.  DISPUTED ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE DEFENDANT ACTED ENGAGED IN UNFAIR TRADE PRACTICES.

Count III is a claim for violation of the Unfair Trade Practices Act. (75 P.S. Sec. 201 *et seq.*)  Claims pursuant to the specific sections of the Act do not require a showing of fraud. DiLucido v. Terminix Intern., Inc.,  450 Pa.Super. 393, 401, 676 A.2d 1237, 1241 (Pa.Super. 1996) (Plaintiffs are not required to prove the elements of common law fraud to establish violations of sections (ii), (v) and (xvi)); Commonwealth v. Hush-Tone Indus., Inc., 4 Pa.Cmwlth. 1, 21 (1971)(Under Section 201-2(4)(v), a plaintiff must establish that a defendant's advertisement is

false, that it actually deceives or has a tendency to deceive a substantial segment of its audience, and that the false advertising is likely to make a difference in the purchasing decision).

A claim under section 201-2(4)(xxi) of the Unfair Trade Practices Act (the catchall provision)  has the same elements as a common law fraud claim. <u>Booze v. Allstate Ins. Co.</u>, 750 A.2d 877, 880 (Pa.Super.2000).  The defendant must have knowing or negligently made a material misrepresentation of an existing fact, justifiable reliance, and damages. *Id.* A cause of action can arise from the breach of a contractual duty, where the defendant is guilty of misfeasance, or the improper performance of a contractual obligation. See <u>Gordon v. Pennsylvania Blue Shield</u>, 378 Pa.Super. 256, 548 A.2d 600, 604 (1988).

GE contends that to  survive a motion for summary judgment, the plaintiff must produce  clear, precise and convincing evidence of fraud.  (Brief at 12).  This is wrong.  In<u>Schroeder v. Acceleration Life Ins. Co. of Pennsylvania</u>, 972 F.2d 41 (3rd.Cir 1992), the Third Circuit denied summary judgment and held that allegations and evidence that insurer  defrauded its insureds in several ways: by promising them benefits it never intended to pay, by calculating benefits on a daily rather than on a monthly basis and by terminating coverage prematurely;

stated a sufficient claim under Pennsylvania Unfair Trade Practices and Consumer Protection Law.

Here, plaintiff alleges that GECA defrauded him by promising coverage it never intended to pay and by illegally reducing his coverage without notice or authority. These allegations are supported by evidence.

GECA represented to plaintiff that it would pay 100% of the principal sum plus continuance coverage benefits under the policy in the event of accidental death. (Exhibit H, Plaintiff s Answer to Defendant s Interrogatory Number 10; Exhibit B, Policy, GE 00009, 00020). If GECA s interpretation of the Policy is accepted, GECA s representation was materially false. The actual value, according to GECA, is only one-third of the Principal Sum. Based on this misrepresentation, the plaintiff purchased an insurance policy that is only worth one-third the value that it was purported to be. (Exhibit H, Plaintiff s Answer to Defendant s Interrogatory Number 10). Thus, there is evidence to support each of the elements of the plaintiff s claim for violation of the Unfair Trade Practices Act sections 73 P.S. Sec. 201-2(4)(v), (vii), (ix), (xiv), and (xxi).

Moreover, GECA unilaterally, and without authority or notice, treated the enrollment form which Franklin submitted to increase his coverage by $10,000, as a request for reduction in

coverage.  (Exhibit G, Deposition of Betty Stucky at 29).  GECA, through its agent, purported to offer more coverage but actually reduced Franklin s coverage. Such a change in coverage, without notice or authority, violates Section 201-2(4)(ix) of the Unfair Trade Practices Act by advertising goods or services with intent not to sell them as advertised.  Alternatively, this is violative of under 201-2(4)(xxi) as fraud.

Therefore, there are disputed issues of material fact. Clearly, these facts are material and preclude summary judgment.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant s Motion for Summary Judgment and grant the Plaintiff s Cross-Motion for Partial Summary Judgment, and set the matter for further proceedings.

Respectfully Submitted,

_____

ROBERT J. SUGARMAN
CARL W. EWALD
Counsel for Plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500


Dated:  July 29, 2003