UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 02-CV-3359 |
| | : | |
| General Electric Capital Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWER IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendant General Electric Capital Assurance Company ("GECA"), by and through its undersigned legal counsel, hereby submits its Answer in Opposition to Plaintiff's Motion For Leave to Amend Complaint, and in support thereof avers as follows:

1. Denied as stated. It is admitted that this case involves a dispute over the interpretation and application of an insurance policy ("Policy") issued by defendant, under which plaintiff was an insured person. Plaintiff's characterizations of the Policy are denied. The Policy is a written document that speaks for itself.

2. Denied as stated. Plaintiff's characterizations of the Complaint are denied. The Complaint is a written document that speaks for itself.

3. Admitted in part, denied in part. It is admitted that Plaintiff has pursued discovery. It is denied that Plaintiff has obtained any new evidence that the coverage amount of the Policy was $131,000.

4. This paragraph contains no averment of fact, but only a legal conclusion, as to which no responsive pleading in required. To the extent that a response is deemed necessary, the averments in this paragraph are denied.

5. Denied.

6. Denied.

7. Denied as stated. It is admitted that, in 1995, Plaintiff signed and submitted an "Enrollment Form," of which Exhibit "A" to Plaintiff's motion is a true and correct copy. Plaintiff's characterizations of the enrollment form are specifically denied. The Enrollment Form is a written document that speaks for itself.

8. Denied as stated. Defendant, having made reasonable inquiry, lacks knowledge or information sufficient to form an opinion as to the motives of Plaintiff in submitting the enrollment form. Plaintiff's characterizations of the Enrollment Form are specifically denied. The enrollment form is a written document that speaks for itself. Defendant adjusted the amount of Plaintiff's coverage under the Policy in accordance with Plaintiff's request as stated on the enrollment form.

9. Denied as stated. By way of further response, it is admitted that, prior to Plaintiff's submission of the 1995 Enrollment Form, the amount of "additional coverage" for which Plaintiff was enrolled under the Policy was $100,000.

10. Denied as stated. It is admitted that, in 1998, Plaintiff submitted a "Coverage Increase Request" form, of which Exhibit "B" to Plaintiff's motion is a true and correct copy. Plaintiff's characterizations of the Coverage Increase Request form are specifically denied. The Coverage Increase Request form is a written document that speaks for itself.

11. Denied.

12. This paragraph contains no averment of fact, but only a legal conclusion as to which no responsive pleading is required. To the extent that a response is deemed necessary, it is denied that leave to amend under Fed. R. Civ. P. 15(a) is appropriate in this instance.

13. This paragraph contains no averment of fact, but only a legal conclusion as to which no responsive pleading is required. To the extent that a response is deemed necessary, it is denied that leave to amend under Fed. R. Civ. P. 15(a) is appropriate in this instance.

14. This paragraph contains no averment of fact, but a legal conclusion as to which no responsive pleading is required. To the extent that a response is deemed necessary, the averments of this paragraph are denied.

15. Admitted in part, denied in part. It is admitted that the Complaint has not previously been amended. The assertion that amendment is necessary to afford Plaintiff full opportunity to pursue his claim on the merits is not an averment of fact, but a legal conclusion as to which no responsive pleading is required. To the extent that a response is deemed necessary, that averment is denied.

16. Denied.

17. Admitted.

18. Plaintiff has been aware of the information forming the basis for the proposed amendment since before filing his Complaint.

19. Plaintiff has unduly delayed, without justification, in requesting leave to amend the Complaint.

20. Plaintiff lacks a good faith basis for the proposed amendment.

21. The proposed amendment is frivolous.

22. Allowance of the proposed amendment would unduly prejudice GECA.

**WHEREFORE,** Defendant GECA respectfully requests that the Court deny Plaintiff's Motion For Leave to Amend Complaint.

                                                Respectfully Submitted,

                                                **ECKERT SEAMANS CHERIN
                                                    & MELLOTT, LLC**

                              By: _____
                                    Heather E. Rennie, Esquire
                                    Eric M. Fink, Esquire
                                    1515 Market Street, 9th Floor
                                    Philadelphia, PA 19102

                                    Attorneys for Defendant

Dated: August 8, 2003

## CERTIFICATE OF SERVICE

I hereby certify that, I have today served a true and correct copy of the foregoing Answer in Opposition to Plaintiff's Motion For Leave to Amend, and accompanying Brief in support thereof, via hand delivery upon the following counsel of record:

>Robert J. Sugarman, Esquire
>100 North 17th Street, 11th Floor
>Philadelphia, PA 19103
>
>Attorney for Plaintiff

_____
ERIC M. FINK

Dated: August 8th, 2003

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 02-CV-3359 |
| | : | |
| General Electric Capital Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**ORDER**

    **AND NOW**, this ___ day of _____, 2003, upon consideration of the Plaintiff's Motion For Leave to Amend Complaint, and Defendant's response thereto, it is hereby

**ORDERED**, **ADJUDGED** and **DECREED** that the Plaintiff's Motion is **DENIED**.

BY THE COURT:

_____
J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Roscoe Franklin, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 02-CV-3359 |
| | : | |
| General Electric Capital Assurance Company, | : | Judge O'Neill |
| | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF
DEFENDANT'S ANSWER IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

Plaintiff Roscoe Franklin has moved for leave to amend his Complaint to allege that the amount of his coverage under an insurance policy issued by Defendant General Electric Capital Assurance ("GECA") was $131,000—not $31,000 as Mr. Franklin originally averred in his Complaint. While Mr. Franklin claims to have unearthed "new evidence" in the course of discovery to support his new allegation, the reality is that Mr. Franklin has long been in possession of the information on which he bases his proposed amendment. Only in the face of an impending decision on GECA's Motion for Summary Judgment has Mr. Franklin suddenly come forward with a fanciful yarn intended solely to create the illusion of a triable issue of fact. The proposed amendment should be disallowed, because it is untimely, frivolous, and in bad faith, and would unduly prejudice GECA.

**<u>Statement Of The Case</u>**

**A.     Procedural History**

Mr. Franklin commenced this action on March 25, 2002 with the filing of a complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania. GECA filed a timely notice

of removal to the U.S. District Court. Defendant GECA then filed its Answer. In July and August 2002, the parties exchanged self-executing discovery pursuant to Rule 26(a). The parties subsequently exchanged additional written discovery between September and November 2002.[1]

On February 19, 2003, GECA filed a Motion for Summary Judgment, which is currently pending before this Court. By agreement of the parties, Plaintiff was given the opportunity to take additional discovery for the purpose of its response to the Motion for Summary Judgment. On July 29, 2003, Plaintiff filed his response to that Motion.

Simultaneously with the filing of his response to GECA's Motion for Summary Judgment—more than sixteen months after the commencement of this action, nearly one year after GECA served its self-executing disclosures under Rule 26(a), nine months after GECA responded to Plaintiff's written discovery requests, and more than five months after GECA filed its Motion for Summary Judgment—Plaintiff filed the instant Motion for Leave to Amend Complaint. Defendant hereby opposes that Motion, on the ground that Plaintiff lacks a good faith basis for the proposed amendment, that Plaintiff has unjustifiably delayed in seeking leave to amend, that the proposed amendment is frivolous, and that allowance of the proposed amendment would unduly prejudice GECA.

### B. Factual Background

Mr. Franklin is an "Insured Person" under a group insurance policy issued by GECA ("Policy") to Sentry Federal Credit Union ("Credit Union"). The Policy consists of a series of written documents setting forth the terms and conditions of insurance coverage. The Policy

---

[1] On March 26, 2003, the Court denied a motion by Plaintiff seeking an order to compel further responses to his written discovery requests.

2

provides accidental injury or death coverage for Credit Union members. (Carrillo Aff.[2] ¶¶ 3-7 and Exh. "1" [GE00001-GE00028]; *see also* Complaint, ¶¶ 4-5 and Exh. "A"). Mr. Franklin enrolled for non-contributory coverage under the Policy as a member of the Credit Union. He also elected additional voluntary coverage under the "Family Plan," which also covered his wife (his sole dependent). (Carrillo Aff., ¶¶ 6, 7, 14, 15 and Exh. "1" [GE00003, GE00004, GE00005, GE00018]).

Coverage under the Family Plan is based on the Contributory Principal Sum for which the insured has enrolled. In the case of a spousal claim (where there are no other covered dependents), the Policy expressly provides that the applicable principal sum is equal to sixty percent (60%) of the Contributory Principal Sum. Where a claim is for accidental death, one hundred percent (100%) of that amount (i.e. 60% of the Contributory Principal Sum) is payable. However, where the covered individual is more than seventy years old, the benefit is "reduced to 50% of the benefits otherwise payable."   (Carrillo Aff. ¶¶ 8-13 and Exh. "1" [GE00005, GE0009, GE00019, GE00020, GE00024]).

Mr. Franklin originally enrolled for $50,000 in additional (i.e. Contributory) coverage, for which he was charged a quarterly premium of $22.50. (Stuckey Dep.[3] Exh. "C" [PR006]). In 1993, that amount was increased to $100,000 at Mr. Franklin's request, with a corresponding increase in the quarterly premium to $45. (Stuckey Dep. Exh. "C" [PR007]). In 1995, Mr. Franklin submitted an Enrollment Form changing the amount of additional coverage to $10,000, whereupon his quarterly premium was reduced to $4.50. (Stuckey Dep. Exh. "C" [PR007-8]). In

---

[2] A true and correct copy of the Affidavit of Patricia Carrillo, and the exhibits thereto, is attached at appendix "A" hereto.

3

1998, Mr. Franklin again requested a change in the amount of additional coverage under the Policy, increasing it to $30,000, with a concomitant increase in the quarterly premium to $14.85. (Stuckey Dep. Exh. "C" [PR008-9]). Mr. Franklin was provided with a revised Certificate of Accident Insurance reflecting the changes in his coverage.[4] (Stuckey Dep. at 30:20-31:10 and Exh. "B" [PR046-49]).

Mr. Franklin's wife died as the result of an accident on December 12, 2000. (Carillo Aff. ¶ 18 and Exh. "3" [GE00033]). At the time of her death, she was more than seventy (70) years old. (*See* Carillo Aff. ¶ 19 and Exh. 3 [GE00033]). The "Contributory Principal Sum" on the Policy was then $30,000. (Carillo Aff., ¶ 17 and Exh. "2" [GE000032]). The Principal Sum under the Policy for a loss sustained by Mr. Franklin's wife was therefore $9,000 (i.e. $30,000 x 60% for spousal loss x 50% for insured person over age 70). The benefit payable upon the death of Mrs. Franklin was 100% of that Principal Sum. In addition, GECA applied a Continuous Coverage Bonus of 10% to the total amount of coverage. (Complaint, ¶ 9; Plaintiff's Response to Interrogatory No. 6; Carrillo Aff., ¶ 20). Accordingly, on July 12, 2001, GECA issued a check to Mr. Franklin in the amount of $9,900, together with an explanation of the benefit calculation. (Plaintiff's Response to Interrogatory No. 3; Carrillo Aff., ¶¶ 21-22 and Exh. "3" [GE00035, GE00036]).

Notwithstanding the express terms of the Policy, Mr. Franklin contends that he was entitled to benefits in an amount equal to the total Principal Sum plus the Continuous Coverage Bonus. (Complaint, ¶ 10; Plaintiff's Responses to Interrogatories, ¶¶ 7, 8). He originally

---

[3] A true and correct copy of excerpts from the deposition of Betty Stuckey, and exhibits thereto, is attached at appendix "B" hereto.

4

contended that the total Principal Sum under the Policy was $31,000.[5] (*See* Plaintiff's Response to Interrogatory No. 7). However, in his Motion for Leave to Amend, Mr. Franklin now contends that the amount should be $131,000.

**Argument**

**The Court Should Deny Plaintiff's Motion for Leave to Amend His Complaint, Because the Proposed Amendment Is Untimely, Frivolous, and in Bad Faith, and Would Be Unduly Prejudicial to GECA**

Leave to amend a complaint under Fed. R. Civ. P. 15(a) is subject to the discretion of the Court. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). While the federal courts generally take a "liberal approach to amendment," *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990), leave to amend "is not automatic." *Solfanelli v. Mainwaring*, 1992 U.S. Dist. LEXIS 16430 at *1 (E.D. Pa. Oct. 28, 1992). Rather, a court may deny leave to amend on the grounds of bad faith or undue delay on the part of the moving party, on the grounds that the proposed amendment is frivolous, or on the grounds that allowing the amendment would unduly prejudice the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993); *Solfanelli*, 1992 U.S. Dist. LEXIS 16430 at *1. Applying those standards, this Court has explained that, "[m]otions for leave to amend may be denied when they are based primarily on facts known prior to the filing of earlier pleadings." *Solfanelli*, 1992 U.S. Dist. LEXIS 16430 at *2.; *accord Furman Lumber v. Mountbatten Sur. Co.*, 1997 U.S. Dist.

---

[4] Significantly, Mr. Franklin does not deny that he received the revised Certificate of Accident Insurance. *See* Franklin Aff. (Exhibit "C" to Plaintiff's Motion for Leave to Amend Complaint).

[5] Mr. Franklin evidently fails to distinguish between the "Non-Contributory" Principal Sum, which pertains to the automatic coverage that he received as a Credit Union member, and the "Contributory" Principal Sum, which pertains to coverage under the Family Plan. (*See* GE00005, GE00019). In this regard, the clear and unambiguous Policy documents speak for themselves.

5

LEXIS 10120 at *5 (E.D. Pa. July 14, 1997) (citing moving party's two month delay after learning of new information among grounds for denying leave to amend).

In *Solfanelli*, the plaintiff, who had filed his complaint in October 1991 and filed an amended complaint in February 1992, sought leave to amend the complaint again to allege additional facts. *Id.* at *1. The events on which the new allegations were based had occurred in 1990. *Id.* The defendant contended that the plaintiff must have been aware of that information when he filed his original complaint, and the court concluded that "at the latest, plaintiff learned this information during depositions and other discovery held in and around December 1991." *Id*. at *3. Citing the "plaintiff's prior knowledge of this matter," and his "failure to explain his failure to plead these matters earlier," the court denied leave to amend. *Id.* at *3.

In this case, the ostensible premise for the proposed amendment is purported "new information … not available to plaintiff at the time of filing suit." *See* Motion for Leave to Amend Complaint, ¶¶ 5. Contrary to the representations in the Motion for Leave to Amend, however, there is no "new" or "recently obtained" evidence to support the belated claim that the amount of coverage under the Policy was $131,000, as Mr. Franklin wishes to aver in the proposed Amended Complaint. To the contrary, as in *Solfanelli*, the information on which Mr. Franklin bases his proposed new allegations has long been available to him.

The notion that Mr. Franklin was unaware of the changes in his coverage until July 9, 2003 (*see* Motion for Leave to Amend, ¶ 16) is preposterous. Mr. Franklin acknowledges that he signed and submitted the 1995 and 1998 change requests himself. (*See* Franklin Aff., ¶¶ 11, 12). He does not deny that he received a revised Certificate of Accident Insurance in 1998, clearly indicating that he had $30,000 in Contributory coverage under the Family Plan. (*See* Franklin

6

Aff.; Stuckey Dep. Exh. "B" [PR046]). Thus, like the plaintiff in *Solfanelli*, Mr. Franklin was already aware, when he filed his original Complaint in 2002, of the information on which he bases his proposed amendment. Yet, in the original Complaint, Mr. Franklin averred that the total amount of coverage was $31,000 (i.e. the sum of the Non-Contributory and Contributory Principal Sums). Had Mr. Franklin actually believed that the 1995 Enrollment Form and the 1998 Coverage Increase Request had the effect of increasing his coverage to $131,000, surely he would have claimed that amount at the outset. Apparently, Mr. Franklin would have the Court believe that he had completely forgotten about those forms when he prepared his original Complaint, but that he can now perfectly recall his understanding of those forms at the time he submitted them. Any such claim would strain belief well past the breaking point.

Moreover, even if Mr. Franklin had somehow forgotten about his 1995 Enrollment Form and 1998 Coverage Increase Request when he prepared his original Complaint, he unquestionably knew about, and had copies of, those documents, at the latest, in August 2002, when GECA produced them as part of its Rule 26(a) disclosures.[6] Thus, the averment that he did not know about those forms until July 9, 2003 is a brazen falsehood. In fact, Mr. Franklin has been in possession of the information on which he now relies, at the very least, for nearly a year. Yet, without any evident justification, he waited until the last possible moment, when his answer to GECA's Motion for Summary Judgment was due, to seek leave to amend. Such undue delay imposes "an unwarranted burden on the court" and is "'prejudicial,' placing an unfair burden on [GECA]," and is thus grounds for denying the motion for leave to amend. *See Cureton v. NCAA*, 2000 U.S. Dist. LEXIS 4790 at * 6 (E.D. Pa. Apr. 13, 2000 *aff'd* 252 F.2d 267 (3d Cir. 2001)); *see also Vosgerichian v. Commodore Int'l*, 1998 U.S. Dist. LEXIS 17681 at * 11 (E.D. Pa. Nov.

7

4, 1998) ("Plaintiff has been inexplicably dilatory in moving for this amendment, and he appears to have done so only in response to Defendants' Motion for Summary Judgment.").

Moreover, the new allegations contained in the proposed amended complaint are patently frivolous. Mr. Franklin insists that, when he submitted the 1995 Enrollment Form, he believed he was increasing his Contributory coverage from $100,000 to $110,000, and that when he submitted the 1998 Coverage Increase Request, he believed he was increasing his Contributory coverage to $130,000. Yet, he simultaneously avers that, when he prepared his original Complaint, he believed he had only $30,000 in Contributory coverage. Such foolish inconsistency is irksome to a mind of any size. *Cf.* Ralph Waldo Emerson, Self Reliance, in *Ralph Waldo Emerson: Essay and Lectures* (J. Porte, ed. 1983).

Further undermining the plausibility of Mr. Franklin's new allegations is the fact that, in January 1996, after he submitted the Enrollment Form requesting $10,000 in "additional coverage," his quarterly premium payment decreased from $45 to $4.50—in exact proportion to the reduction of his coverage from $100,000 to $10,000. The premium payment then increased to $14.85 upon Mr. Franklin's request to increase his additional coverage to $30,000. In addition, Mr. Franklin was provided with an amended Certificate of Accident Insurance reflecting the 1995 and 1998 changes. In the face of this undisputed evidence, it is simply nonsensical for Mr. Franklin to claim that he believed he had anything more than $30,000 in Contributory coverage.

Mr. Franklin's prior knowledge of the matters he belatedly seeks to raise in an amended complaint, coupled with his failure to offer any justification for waiting until now to act on this information, "is a basis for denying plaintiff's motion." *Solfanelli*, 1992 U.S. Dist. LEXIS 16430

---

[6] GECA produced copies of those documents again in October 2002 in response to Plaintiff's discovery requests.

at *3; *see also Cureton*, 2000 U.S. Dist. LEXIS 4790 at *6 ("When a party filing a motion to amend has no adequate explanation for the delay, untimeliness can be a sufficient reason to deny leave to amend"). The frivolous nature of the proposed new allegations provides further grounds for denial. *See Ross v. Jolly*, 151 F.R.D. 562, 565 (E.D. Pa. 1993). The motion for leave to amend is nothing more than a transparent last-ditch ploy to escape summary judgment by concocting a supposed issue of fact. Under these circumstances, to allow the amendment would both unreasonably burden the Court and unduly prejudice GECA. *See Cureton* 2000 U.S. Dist. LEXIS 4790 at * 6; *Vosgerichian,* 1998 U.S. Dist. LEXIS 17681 at * 11.

Conclusion

For all of the foregoing reasons, the Court should deny the Motion For Leave to Amend.

                    Respectfully Submitted,

                    **ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: _____
      Heather E. Rennie, Esquire
      Eric M. Fink, Esquire
      1515 Market Street, 9th Floor
      Philadelphia, PA 19102

      Attorneys for Defendant

Dated: August 8, 2003

*M0419246.DOC*

10