**SUGARMAN & MARKS**
**By: ROBERT J. SUGARMAN, ESQUIRE**
Identification No: 03332
**CARL W. EWALD, ESQUIRE**
Identification No: 85639
100 N. 17th Street - 11th Floor     Attorneys for Plaintiff
Philadelphia, PA 19103
(215) 864-2500
_____

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |
|---|---|
| **ROSCOE FRANKLIN** : |   |
| Plaintiff, : |   |
| : |   |
| v. : | NO. 02-CV-3359 |
| : |   |
| **GE CAPITAL ASSURANCE** : |   |
| **COMPANY** : |   |
| Defendant. : |   |
| : |   |

### PLAINTIFF'S REPLY BRIEF RE:
### MOTION FOR LEAVE TO AMEND COMPLAINT

Defendant's opposition to Plaintiff's Motion is extraordinary and requires this Reply.

Paragraph 8 of GECA's Answer, characterizing the plaintiff's request, is a gross misrepresentation. It is clear and admitted that Franklin, already having a policy of $100,000, completed an "enrollment form" which specified $10,000 in "additional coverage", not a reduction. (Form attached as Exhibit A). He never knew of, requested, nor authorized a reduction in his coverage amount.

GECA's claim that this form caused a $90,000 reduction was

only recently advanced. When the policy amount provided by GECA, GECA had stated in informal discovery that an "NSF" notation in its file that the $100,000 coverage had been cancelled for nonpayment. (Letter attached as Exhibit B).

GECA now admits it reduced plaintiff's coverage without direction by plaintiff to reduce his coverage. Indeed, in July 2003, GECA, through its agent, Progeny Marketing ("Progeny"), admitted that Franklin could not and would not use the enrollment form to reduce coverage. (designee Betty Stuckey attached hereto as Exhibit C, at 31). Thus, there is no conceivable way the plaintiff "requested" defendant to "adjust the amount of plaintiff's coverage" (Answer at ¶ 8) by reducing his coverage.

Thus, defendant GECA's argument, that the Court should not grant leave to amend because the proposed amendment is frivolous, is itself frivolous. Its construed an enrollment form requesting additional coverage as an election to decrease coverage is astonishing.

At best, the form, if intended to initiate a reduction, is false and misleading. Significantly, the form was not included in the Pennsylvania approved regulatory package of policy forms it provided to plaintiff herein. nonfrivolous claims for bad faith, fraud and breach of connon

and GECA does not refute them.

The Consumer Fraud Act independently affords similar protection.

## ARGUMENT

The law is very well established that "leave [to amend] shall be freely given."  E.g. <u>Dole v. Arco Chemical Co.</u>, 921 F.2d 484, 486 (3d Cir.1990).  Defendant GECA makes several arguments to try to fit the present Motion within an exception to the rule, but each is clearly meritless.

### A.   THE PROPOSED AMENDMENT STATES A MERITORIOUS CLAIM WHICH SHOULD BE HEARD.

The proposed amendment is not frivolous.  The duty of an insurer in Pennsylvania is well established; in the meaning of documents which it requests an insured to sign. <u>Tonkovic v. State Farm Mut. Auto. I</u> 920, 924 (Pa. 1987).  For an insurer to unilate policy, it must make an affirmative showing that insured public notified of, and understood the change, regardless of whether insured read the policy. *Id.*

GECA has not offered, let alone made, any such showing.  Nor does it cite any law stating that an enrollment form unilaterally construed without notice as a request to adjust the coverage down, where the only request is for additio coverage.

GECA's proffered construction or inference turns the law and

facts on their head. It would require that the Court make the insured the professional; it asks that an elderly insured be required to be an accountant with high sophistication and perfect memory. In suggesting plaintiff must have been aware of the reduction it claims, (Brief p. 6) GECA asks the Court to find, without evidence or opportunity to testify, that an insured such as Franklin (a blue collar employee credit union member), purchasing the type of policy involved here (a low sophistication policy) must remember what his coverage was in terms of values which change their value over time and (b) GECA's statement as to the value six years later; and also that the know that a reduction in premium is proportionate to a reduction in value which he never requested or authorized, nor was informed of.

Both claims are meritless, frivolous, and indeed offensive. The premise is not even true. A reduction in premium is not necessarily coincident with a reduction in value; many policies provide for participation or dividends, such that premiums are reduced while value remains the same, or even increases.

Moreover, to ask a layman insured to have understood that a 90% reduction in premium entailed a 90% reduction in value, would have required him to have asked that question in the first place: what is the effect of a decrease in value? He would only ask if he knew of the decrease in the values or was told of the decrease in value. And the premiums were

automatically deducted once a quarter [to his] account. There is no evidence that Franklin examined the charges and, even if he had noticed a change, because of the infrequency of the automatic deduction, he cannot [recall] the amount his prior bill had been [several] months prior. He had no reason to ask these questions. He only did not have notice of any reduction or multiple deductions as a result of his enrollment, but was told his coverage was additional.

Indeed, [Franklin] experienced a reduction [upon the] death of his wife, in October 2002, (Exhibit C, at 57-9). The premium was not reduced immediately even though GE [had] notice of her death. Franklin did not receive [a] premium reduction either. Clearly a reduction in premium does not always mean a reduction in value.

It is equally offensive to suggest that where the [plaintiff] swears that he intended to increase [coverage in good] faith. (Brief at 7). In fact, it is absolutely and totally logical and natural that an insured [would have a] consistent practice that he had [since] 1995; but would not be able to understand and parse the policy to contradict the defendant's 2001 representation that the value was $30,000 (then arguably by defendant, to be adjusted downward). In fact, what occurred is what often occurs; plaintiff obtains

counsel writes to the carrier, the carrier states the coverage and the insured and... (Exhibit D and E)

The fact that the facts herein were only discovered in formal discovery, only shows that GECA cannot... conduct. Pennsylvania law, as recognized by the Third Circuit, holds that the insurer's duty of good faith extends to the conduct of the insurer in its claims process. E. g., <u>W.V. Realty, Inc. v. Northern Ins. Co.</u>, 334 F.3d 306, 313 (3d ... faith is actionable regardless of whether it occurs before or after litigation.) *citing* <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 906 (Pa.Super.1999).

In short, defendant's arguments all represent self-serving "hindsight" contentions, which ignore the basic wrong: defendants knowingly used an "enrollment form" requesting "additional coverage" to make a 90% reduction in value.

Without more, the obvious inference is that the carrier took significant premiums from the plaintiff when the lives were young and the risk was low, but when the insured lives increased in age to the point that the risk of death and duty to pay became significantly greater; then the carriers... and did so by using misleading documentation. It is not necessary for the Court to resolve these issues at this time; it is only necessary for the Court to agree that t...

In fact, they are far from frivolous. Indeed, the strength of the claim is overwhelming.

**B.   THE MOTION FOR LEAVE TO AMEND WAS TIMELY FILED**

The Motion to Amend was filed within 20 days of the GECA agent's deposition, and within 120 days of the agent's deposition, which revealed and confirmed, respectively, the facts and basis of the Motion, i.e. that the enrollment form was the basis of the $90,000 reduction. Yet GECA argues that the Motion for Leave to Amend should be denied because it was not timely filed. (Brief at 6).

This claim is baseless in law and fact. The rule is that this Court may deny leave to amend only if a plaintiff seeking amendment is undue, motivated by bad faith, [prejudicial] to the opposing party. Adams, 739 F.2d at 864, Foman v. Davis, 371 U.S. at 182, 83 S.Ct. at 230; Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir.1984). The question focuses on the plaintiff's motives for not amending earlier. *Id.*

Here, there is no bad faith.

When plaintiff requested [the policy information, he] was told by GECA that it was only $31,000. (Exhibits [omitted]). [When] the policy file was reviewed, and the reduction was not explained therein, GECA counsel said the reduction was likely due to a cancellation for nonpayment. Only after investigation through plaintiff's credit union showing there was no NSF, and then on

through discovery, did the facts emerge. While GECA later arg[ues] that plaintiff had requested misled until the deposition of GECA on Apri[l ...] stated that Franklin had requested reduction of his policy via the enrolment form (Deposition of designee Nancy Kappes attached hereto as Exhibit F, at 42-3). To confirm this, pla[intiff took the] deposition of Progeny on July 9, 2003. Progeny confir[med and] admitted that there was no NSF, and admitted that Franklin had never requested a reduction. (Exhibit C at 29-30). Progeny's deposition had been sought by plaintiff for months, but was delayed. Thus, there was no bad faith, and no delay by plaintiff.

GECA makes the spurious argument that Franklin had the documents which it now admits effectuated the change after GECA's initial litigation disclosures. (Brief at 7). However, it was not until the depositions that it[s] documents related to the change, i.e., documents related to the chan[ge] which explicitly requested additional coverage, had been utilized to reduce coverage, and that there was no notice to pl[aintiff or] authorization by him. Clearly, the filing was prompt.

Moreover, even if the Motion had been delayed, Rule 15 [...] expresses a liberal amendment philosop[hy ...] district court's discretion to deny leav[e ...] <u>Gould, Inc.</u>, 739 F.2d 858, 864 (3d Cir. [...] time, without more, does not require that [...]

complaint be denied  Adams, 739 F.2d at 864, *citing* Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir.1982); Tefft v. Seward, 689 F.2d 637, 639 (6th Cir.1982).

GECA argues that Solfanelli v. Mainwaring 1992 WL 328829, *2 (E.D.Pa.), controls. However, Solfanelli is a completely different case. In Solfanelli the plaintiff failed to offer any ex for his delay in pleading "new" information and the Court found that there was prejudice to defendants. Here, Franklin has clearly explained it was not until the deposit before the Motion was filed, that the actions of the defendant fully brought to light.

GECA cannot rely on its own nondisclosure to establish undue delay.

Thus, there was no undue delay.

### C. GECA HAS FAILED TO ALLEGE ANY PREJUDICE BECAUSE THERE IS C. PREJUDICE

Finally, GECA baldly alleges that granting would be unduly prejudicial to it. (Brief at 5). I identify any prejudice, let alone undue prejudice, in its Answer, New Matter, Brief or its self-serving affidavit.

This requires rejection of its argument. Kriscuinas v. Union Underwear Co., 1994 WL 314307, *1 (E.D.Pa.), holds that a bald assertion of prejudice is insufficient to deny leave to amend. While GECA alleges that it will be prejudiced, it never explains how.

Moreover,Moreover, GECA will not beMoreover, GECA will not be prejudice

setset a discovery deadline, nor has a trial schedule been set.  GECA

still has plenty of time to prepare its defense in this case.

## CONCLUSION

ForFor the foregoingFor the foregoing reasons, the Court shouldFor the

Motion for Leave to Amend.

                                          Respectfully submitted,

                                          _____

                                          ROBERT J. SUGARMAN
                                          Counsel for Plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500

Dated:  August 14, 2003