IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROSCOE FRANKLIN | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | NO. 02-CV-3359 |
|  | : |  |
| G E FINANCIAL ASSURANCE COMPANY | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

**SUPPLEMENTAL MOTION AND MEMORANDUM RE: MOTIONS AND CROSS MOTIONS FOR SUMMARY JUDGMENT**

On October 8, 2003, the Court authorized the filing of an Amended Complaint to address the reduction in policy coverage by a 1995 Enrollment Form. Subsequently, on October 28, 2003, the Court authorized supplemental submissions, concerning the pending summary judgment motions. Per conversation with the deputy clerk, Plaintiff's submission date was extended from November 12 until November 14, 2003.

Accordingly, this submission supplements Plaintiff's previously filed Answer to Defendant's Motion for Summary Judgment and Plaintiff s Cross-motion for Partial Summary Judgment. Plaintiff continues to oppose judgment for defendant and submits that discovery is required before judgment could be entered for defendant. Additionally, for the reasons set forth herein, Plaintiff supplements the cross-motion for summary

judgment on the Breach of Contract count in regard to the "enrollment form."

## STATEMENT OF FACTS

Plaintiff was provided with $1,000 in free coverage as a member of his credit union. However, in accepting that coverage, plaintiff began to purchase increased coverage at each opportunity offered by defendant. Several times, plaintiff completed whatever forms were provided and checked boxes labeled additional coverage . Defendant at each stage propounded that plaintiff would  increase  the coverage by his elections. By 1995, plaintiff had $101,000 in coverage.  (Exs. C, E, F).

In 1995, plaintiff completed an  enrollment form  sent to him unsolicited. It included a box entitled  additional coverage $10,000.  It did not reference any termination or reduction of his existing coverage. (Ex. E). A later 1998 additional coverage purchase increased the coverage by $20,000 additional. (Ex. D).

As a result of these elections, the  total principal sum  as defined in the policy and in the certificate was $131,000.

Unbeknownst to plaintiff, however, without plaintiff s knowledge, and in a fashion which contradicts plaintiff s clearly reasonable interpretation, the  enrollment form  was used to reduce his coverage from $101,000 to  $11,000, according to defendant s secret practice.

The 1995 enrollment form was clearly presented to plaintiff as an opportunity to increase coverage, and not as a substitute for the existing $101,000 coverage. It was only defendant s secret intention which caused the form to be used to reduce the policy.

Defendant contended in depositions that the sending of a certificate after the enrollment form was submitted would or should have alerted plaintiff that his effort to increase coverage actually reduced coverage. (Ex. G). There is nothing on the certificate which so indicates. It is uncontradicted that plaintiff intended to increase his coverage. (Ex. C). No such certificate has been produced on discovery or otherwise, and indeed defendant averred in its affidavit in support of summary judgment (¶ 5) that its document GE I-28are all contractual documents.

In addition to misusing the enrollment form in what can only be described as intended fraud, as set forth in the earlier Brief (Pl. Brief pp. 22-25), the policy promised payment of the full principal sum , defendant used policy language which purported to reduce the payable amounts by 70% after age 70. (Ex. B). The policy form is inconsistent with the prominent statement on the front of the policy which clearly states that 100% of the full principal sum will be paid, and defines the full principal sum as the full coverage. There is an inconsistency between the front

of the form and the vague language in the rider.

## ARGUMENT

**I.  JUDGMENT FOR BREACH OF CONTRACT IN REGARD TO THE "ENROLLMENT FORM" SHOULD BE ENTERED FOR PLAINTIFF BECAUSE THE POLICY DOES NOT STATE OTHERWISE.**

   **A.  INTERPRETATION OF POLICIES**

GECA s Motion for Summary Judgment should be denied and Franklin s Cross Motion as supplemented should be granted because the  enrollment form  did not reduce Franklin s coverage.

Under Pennsylvania law, insurance contract interpretation is for the court rather than the jury. Barrer v. Metropolitan Life Insurance Co., 151 F.Supp.2d 617,622 (E.D.Pa. 2001) Interpretation of an insurance policy and the determination that ambiguity exists is for the court. Id.

As set forth in Plaintiff s prior Brief (p.p. 8 to 20)under Pennsylvania law, there are two clear rules applicable to insurance policies:

> "     Any uncertainty or ambiguity to the policy is to be interpreted against the insurer  any ambiguity in the written words will be construed liberally in favor of the insured.  Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 593-594, 388 A.2d 1346, 1353 (Pa. 1978); Burne v. Franklin Life Ins. Co., 451 Pa. 218, 226-27, 301 A.2d 799, 804 (1973). Ambiguities are strictly construed against the insurer. Selko, 139 F.2d

at 148.

" inconsistencies are to be interpreted in favor of the insured. Barrer v. Metropolitan Life Insurance, Co., 151 F.Supp.2d 617, 621(E.D.Pa. 2001); Selko v. Home Ins. Co., 138 F.3d 146 (3d Cir. 1998); Reliance Ins. Co. v. Moessner, 121 F.3d 895 (3d Cir. 1997) (as amended); St. Paul Fire and Marine Ins. Co. v. Lewis Bateman v. Motorists Mutual Ins. Co., 527 Pa. 421, 590 A.2d 281 (Pa. 1991).

Ambiguity or inconsistency thus warrants summary judgment for the plaintiff.  Musisko v. Equitable Life Assurance Society, 344 Pa.Super. 101, 106, 496 A.2d 28, 31 (1985).  In Musisko the Pennsylvania Superior Court held that:

> it is a fundamental principle of interpretation of insurance contracts that if the language of a policy prepared by an insurer is ambiguous, obscure, uncertain, or susceptible to more than one construction, courts will interpret it most strongly against the insurer and accept the construction most favorable to the insured.

Under Pennsylvania law, a provision of an insurance contract is ambiguous if a reasonably intelligent person, considering it in the context of the whole policy, would differ regarding its meaning. Barrer v. Metropolitan Life Insurance, Co., 151 F.Supp.2d 617, 622(E.D. Pa. 2001)

Decisions have consistently held that the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. Collister v. Nationwide Life Ins. Co., 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55; Tonkovic v. State Farm Mutual Automobile Insurance Co., 513 Pa. 445, 521 A.2d 920 (1987); Beckham v. Travelers Ins. Co., 424 Pa. 107, 117-18, 225 A.2d 532, 537 (1967); *see also* Dibble v. Security of America Life Ins. Co., 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (Pa.Super. 1991). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Collister, 388 A.2d at 1353.

The use of the Enrollment Form / Additional Coverage is barred because the policy and is what a reasonable insured would have understood it to mean, as Franklin did. This duty lies with the Court, although Franklin s testimony as to his actual understanding may also be considered. Barrer, 151 A.2d at 621-622; Giangreco v. U.S. Life Ins. Co., 168 F.Supp.2d 417, 422 (E.D. Pa. 2001); Collister, 388 A.2d at 1346 & 1353.

The Court may determine that the policy means, as a matter of law and/or interpretation, what the insured such as Franklin would or could reasonably understand it to mean. Collister, 388 A.2d at 1346 & 1353.

Franklin originally purchased $50,000 in   contributory principal sum which was increased to $100,000 on August 19, 1993. (Ex. F). In 1995, Plaintiff received the unsolicited form from defendant offering   additional coverage  , by way of an   Enrollment Form  . (Ex. E). At the time, plaintiff already had the $100,000 benefit. He intended to purchase more coverage by submitting the   Enrollment Form  , on November 2, 1995, to purchase an additional $10,000 as stated on the form. However, defendant used the form as a reduction of coverage. (Pl. Aff. Ex. C).

Defendant has presented no evidence that Mr. Franklin understood that defendant was unilaterally purporting to reduce the coverage for his spouse, or agreed to do so.  It cannot argue from unilateral changes to the policy. Therefore, defendant has failed to, and in fact cannot, meet its burden.

To the extent there was any hint, it is undisputed that the insured (plaintiff) understood the policy to increase the coverage at each occasion, as stated.   (Pl. Aff. Ex. C). Therefore, the Court should enter judgment in favor of plaintiff for breach of contract in regard to the amount of $131,000, plus 5 times 5% which equal $32,750(continuous benefit since 1991), as a matter of law. As previously argued, the Court may and should treat the policy as providing for payment of the   full principal

sum   as stated on the certificate. (Pl. Brief pp. 8-20).

    **B.**    **DUTY OF INSURER TO CLEARLY STATE CHANGE**

The duty of an insurer to the insured is strict and unitary. The insurer is obligated to treat its insured in the utmost good faith and to discharge a fiduciary responsibility to provide the insured with protection in accordance with the intent of the insured, as known to the insurer. *See* <u>Rosenbaum v. Unum Life Insurance Co.</u>, 2003 WL 22078557 (E.D. Pa. Sept. 8, 2003); <u>Spreecher v. Aetna U.S. Healthcare, Inc.</u>, No. 02-CV-00580 2002 U.S. Dist. LEXIS 15571 (E.D. Pa. Aug. 19, 2002*); *<u>Bell v. UNUM Provident Corp.</u>, 222 F.Supp.2d 692 (E.D. Pa. 2002).

The action of GECA in regard to the composition of the initial certificate, the policy forms, and the utilization of the enrollment form  are of a piece.  They are not discrete contractual relationships; to the contrary, they are a course of conduct, and as such, are to be measured against the obligations of the insurer.  Insurance policies are considered contracts therefore contract law applies. *See* <u>Trans American Office Furniture v. Travelers Property & Casualty</u>, 222 F.Supp.2d 689 (E.D. Pa. 2002). Therefore, as in contract law, the contractual relationship needs to be viewed as a whole and an interpretation of the contract cannot be based on merely one aspect. *See* <u>Miller v. Commercial Electric Construction, Inc</u>., 223 Pa.Super 216, 297

A.2d 487 (Pa.Super. 1972).

An insurer in Pennsylvania must clearly state the meaning of documents which it requests an insured to sign. <u>Tonkovic v. State Farm Mut. Auto. Ins. Co.</u>, 513 Pa. 445, 521 A.2d 920, 924 (Pa. 1987). For an insurer to unilaterally change a policy, it must make an affirmative showing that insured was notified of, and understood the change, regardless of whether insured read the policy. *Id.*
GECA has not offered, let alone made, any such showing. Nor does it cite any law stating that an enrollment form may be unilaterally construed without notice as a request to adjust the coverage down, where the only request is for additional coverage. While defendant has not addressed this subject on summary judgment, the subject was briefed in the Plaintiff s Motion for Leave to Amend. Anticipating defendant could or may advance similar arguments, plaintiff incorporate that reply brief herein as Exhibit I for convenience.

Moreover as stated in Plaintiff s Reply Brief (pp. 6-7), the fact that the facts herein were only discovered in formal discovery, also legally establishes that GECA cannot take advantage of its conduct. Pennsylvania law, as recently restated by the Third Circuit, holds that the insurer s duty of good faith extends to the conduct of the insurer in its claims process. E.

g., <u>W.V. Realty, Inc. v. Northern Ins. Co.</u>, 334 F.3d 306, 313 (3d Cir. 2003)( bad faith is actionable regardless of whether it occurs before, during or after litigation. )*citing* <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 906 (Pa.Super.1999).

In short, defendant s arguments all represent self-serving  hindsight  contentions, which ignore the basic wrong: that defendant knowingly used an  enrollment form  requesting  additional coverage  to make a 90% reduction in value.

Without more, the obvious inference is that the carrier took significant premiums from the plaintiff when the lives were young and the risk was low, but when the insured lives increased in age to the point that the risk of death and duty to pay became significantly greater; then the carrier wanted to reduce its risk, and attempted to do by using misleading documentation.

**II.    THERE ARE MATERIAL ISSUES OF FACT THAT PRECLUDE JUDGMENT FOR DEFENDANT IN REGARD TO THE ENROLLMENT FORM**

Defendant contends the amount of the Contributory Principal Sum was $30,000, as clearly stated on the Coverage Increase Request form that Mr. Franklin himself submitted. (Answer, ¶ 11). This is wrong.  GECA s statement of the policy coverage is based on its actions by its agent, Progeny Marketing Innovations, Inc., in unilaterally, and without authority or notice, purporting to <u>reduce</u> Franklin s policy coverage from $100,000 to $10,000,

allegedly in response to an  enrollment form   which Franklin submitted to <u>increase</u> his coverage by $10,000. (Ex. E)

Clearly, if the policy is not interpreted on its face and Franklin s affidavit, in his favor, at $131,000 plus continuous coverage, there are disputed issues of fact as to amount of coverage.  This includes the pending discovery.  Such issues are directly material to whether GECA has paid Franklin the entire sum to which he is entitled and must be resolved after completion of discovery and by disputed evidence.

**III. <u>DISPUTED ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE      DEFENDANT ACTED IN BAD FAITH</u>**

The issues of material fact that exist in regards to whether the Defendant acted in bad faith are similar to the arguments set forth in plaintiff s initial summary judgment brief. (Pl. Brief 20-22). In summary, moreover, the evidence shows that defendant s agent, Progeny Marketing Innovations, Inc., unilaterally, and without authority or notice, <u>reduced</u> Franklin s policy coverage from $100,000 to $10,000, allegedly in response to the   enrollment form. (Exhibit G, Deposition of Betty Stucky at 29-30).  Franklin was told his coverage was to be increased (Exhibit C, Franklin Aff. at 10-13), but defendant illegally and secretly used the document to decrease his coverage.

In addition, the law regarding the contractual relationship

11

between insured and insurer is to be examined as a whole (as argued in Sec. I). This is also applicable to the determination of the liability of the insurer under the Bad Faith Insurance Statute, 42 P.S. 8371. That statute, of course, codifies the judicially developed duty of the insurer and where seriously violated, characterizes is insurer  bad faith , and provides for punitive relief (Section 8371(2)) and attorneys fees (Section 8371(3)). Given, in particular, that the Legislature did not define  bad faith , it follows that the Court s decision as to bad faith also entails consideration of the course of conduct of the insurer. Indeed, cases have placed emphasis on the need to examine the conduct of the insurer as a whole, and not a single instance. *See* JHE,Inc. v. SEPTA, 2002 WL 1018941 (Pa. Com. Pl May 17, 2002).

From these considerations and based on these authorities, it follows that to ignore one of the issues relating to the conduct of the insurer, absent the use of the enrollment form, truncates the consideration of the insurer s obligations, and allows the insurer to escape the consequences of cumulative courses of bad faith conduct, and use of subtleties and ambiguities to avoid the contract it held out to the insured.

These disputes of material fact preclude summary judgment. Additionally, as discussed in our prior brief, there are issues

of material fact in regard to whether Mr. Franklin is entitled to 100% of the "Principal Sum". (Pl. Brief pp. 20-22).

## IV. DISPUTED ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE DEFENDANT ACTED ENGAGED IN UNFAIR TRADE PRACTICES.

The argument set forth in Plaintiff's initial Summary Judgment Brief regarding Unfair Trade Practices is applicable to the "Enrollment Form". Defendant's bad faith is illustrated by how, when Franklin requested policy information after his wife's death, defendant told him that his policy was only for $30,000 "contributory" coverage and continued to disguise its unilateral and unauthorized reduction.

According to defendant, plaintiff must establish that defendant made a misrepresentation, that the misrepresentation deceived or intended to deceive, and the misrepresentation was likely to make a difference in the purchasing decision. <u>Fay v. Erie Insurance Group</u>, 723 A.2d 712 (Pa. Super. 1999) and (Def. Brief p. 12).

> The first element, misrepresentation, may include either a false representation of concealment. The Pennsylvania Supreme Court has determined that Consumer Protection Law must be liberally construed. <u>Piper v. American National Life Insurance Co. of Texas</u>, 228 F.Supp.2d 553 quoting <u>Wright v. North Am. Life Assurance Co.</u>, 372 Pa. Super 272, 532 A.2d 434, 438 (Pa. Super. 1988).

Here, the enrollment form fraudulently led plaintiff to believe that the coverage would be increased by checking the box

entitled additional coverage, and that was in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act (Ex. E).

With an existing policy and coverage, such a form actually or tends to deceive an insured especially when no information is attached to explain the consequences of submitting the form. Had Mr. Franklin known the effect of the form, he would not have used it since his intention was to add additional coverage (Ex. C).

Therefore, there are disputed issues of material fact. Clearly, these facts are material and preclude summary judgment.

### V.    RULE 56 REQUIRES THAT NO JUDGMENT BE ENTERED AGAINST PLAINTIFF

Rule 56(f) provides that the Court should provide an adequate opportunity for discovery prior to ruling against the part on summary judgment. To the extent that the carrier s motivations and intentions are relevant, which is certainly the case as to bad faith, therefore, any decision in favor of the carrier should not be made until present requests for discovery are fulfilled and acted upon, respectively. Motion for leave to serve interrogatories, was granted, and requests are also outstanding.

Pursuant to Rule 56(f), an opportunity for discovery and required prior to determination of a Motion for Summary Judgment

against that party.  In authorizing amendment to the Complaint, the Court sustained the plaintiff's contention that new information warranted amendment to make significant additional and different claims.  While defendant now attempts to obtain judgment on the initial claim alleging based on enforcement of its terms of the contract, as well as interpretation with respect to the implementation of the principal sum provision with the additional new claim to require implementation of the acceptable meaning of the term "enrollment form" when used to an existing policy holder, the issue of the ongoing conduct of the insurer goes to both to the issue of contract meaning (independent or related to interpretation, but based on the specifics of insurance enforcement), as well as bad faith.

Thus, the present ongoing and requested discovery relating to the to the origin, intention, and utilization and effects of the "enrollment form" is also relevant in determining the issues relating to "full principal sum."  (Affidavit of Robert Sugarman, Exhibit J).

Moreover, the discovery is timely, since it is being propounded within a few days of the Answer to the Amended Complaint having been filed on October 20, 2003.

The standards for reasonable deferral under Rule 56(f) are flexible.  However, they do afford minimum opportunity for the

nonmoving party.  Such opportunity, should therefore be afforded.

## CONCLUSION

For the reasons stated above, summary judgment for the defendant should be denied; summary judgment should be entered for the plaintiff establishing that the full principal sum of the policy benefit of $131,000 is payable plus five continuous benefit increments, $32,500, minus the $9,900 benefit already paid, and the matter should be held for bad faith damages.

Respectfully Submitted,

_____
ROBERT J. SUGARMAN
Counsel for Plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
11th Floor, Robert Morris Building
100 North 17th Street
Philadelphia, PA 19103
(215) 864-2500

Dated:  November 14, 2003