IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROSCOE FRANKLIN | : | CIVIL ACTION |
|  | : | NO. 02-3359 |
|  | : |  |
| v. | : |  |
|  | : |  |
| GENERAL ELECTRIC CAPITAL | : |  |
| ASSURANCE COMPANY | : |  |

O'Neill, J.                                                                              January      , 2004

## MEMORANDUM

### I. INTRODUCTION

Plaintiff Roscoe Franklin sued defendant, General Electric Capital Assurance Company (GECA), asserting claims under Pennsylvania law for breach of contract, bad faith by an insurer, and unfair or deceptive trade practices.  The parties dispute whether GECA applied the correct formula for the calculation of benefits following the death of Franklin's wife and the amount of the gross Principal Sum to which the contractual benefit formula is to be applied.  Presently before me are defendant's motion for partial summary judgment and plaintiff's cross motion for partial summary judgment.  For the reasons stated below I will deny both parties' motions without prejudice to the filing of motions for summary judgment after completion of discovery on the amount of the contributory principal sum.

### II. BACKGROUND

Blanche Franklin, plaintiff's wife, died as the result of an accident on December 12, 2000.  She was seventy-three years old at the time of her death.  Plaintiff is an "insured person"

under a group insurance policy issued by GECA to Sentry Federal Credit Union.  On or about

July 21, 2001, GECA issued a check to plaintiff for $9,900 in response to a plaintiff's claim

arising from his wife's death.

In 1991, Franklin, a member of the credit union, enrolled for the basic $1,000 non-

contributory coverage under the group insurance policy.  Plaintiff further elected voluntary

coverage under the "Family Plan" which covered his wife, who was his sole dependant.  The

amount of the voluntary or contributory coverage is currently disputed by the parties.  Plaintiff

alleges that he originally contracted for $50,000 of coverage under the Family Plan and that he

subsequently increased his contributory coverage to $100,000 on August 19, 1993; to $110,000

on November 2, 1995; and to $130,000 on February 3, 1998.  Defendant maintains that Franklin

had only $30,000 of contributory coverage in December of 2000 when Mrs. Franklin died.

The policy consists of a series of written documents setting forth the terms and conditions

of insurance coverage and provides accidental injury or death coverage for members of the credit

union.  The policy schedule provides that:

> If the Insured has made application for the "Family Plan" and paid the
> required premium therefor, then his or her Spouse is automatically insured for
> 50% of the contributory Principal Sum which applied to the Insured on the date of
> the accident.  If there are no insured children on the date of the accident, this
> percentage is increased to 60%. . . .
> The benefits to be paid under the Policy for loss sustained by an Insured
> Person as a result of an accident which occurs on or after the date such person
> attains 70 years of age shall be reduced to 50% of the benefits otherwise payable.
> This applies to both contributory and non-contributory.

(Pl's Br. in Opp., Ex. B, GE 000005.  See also Id. at GE 000019).  A 1996 policy rider alters the

Family Plan provision to read in part:

> If an Insured Member has applied for the "Family Plan" and paid the premium

-2-

required for it, his or her spouse is automatically insured *for a Principal Sum that is 50% of the Contributory Principal Sum* which applied to the Insured Member on the date of the accident.  If there are no insured children on the date of the accident, this percentage is increased to 60%.

(<u>Id</u> at GE 000024) (emphasis added).

The "Accidental Death and Dismemberment Benefit" section of the policy states:

When an Insured person's injury results in one of the losses stated below within 1 year of the date of the accident, We will pay the percentage of the *principal sum stated* for such loss. . . .  Only one benefit, whichever is greatest, will be paid for all losses which result from any one accident.
Loss of Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100%

(<u>Id.</u> at GE 000009, GE 00020) (emphasis added).  The policy does not provide an explicit definition for the term "principal sum."  The 1996 policy rider defines "insured person" as "You and each of Your Eligible Dependents who is insured under the Policy."  (<u>Id</u> at GE 000024).

Under the policy terms, plaintiff also was entitled to a continuous coverage bonus of five percent for each two years of continuous coverage.  (Pl's. Br. in Opp. , Ex. B,  GE 000010).  In calculating the benefit payable to plaintiff, GECA applied a continuous coverage bonus of ten percent to what it believed was the entire amount of coverage, the amount now in dispute.

### III.  PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint in the Court of Common Pleas for Philadelphia County.  GECA timely removed the case to this Court.  Defendant then filed its answer and the parties exchanged discovery.  Both GECA and Franklin now move for partial summary judgement.

### IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56.  The Supreme Court has recognized that the moving party

"bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions. . . which it believes demonstrate the absence of a genuine issue of

material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has

filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific

facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party

may not rest upon the mere allegations or denials of the party's pleading.  See Celotex, 477 U.S.

at 324.

I must determine whether any genuine issue of material fact exists.  An issue is "material"

only if the dispute over facts "might affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the record taken as a whole in a

light most favorable to the nonmoving party, "could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Co. v. Zenith Radio,

475 U.S. 574, 587 (1986) (citation omitted). If the evidence for the nonmoving party is merely

colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477

U.S. at 249-50 (citations omitted).

## IV. DISCUSSION

Defendant correctly interpreted the policy language.  The rules of contract interpretation

govern the principles of insurance policy interpretation under Pennsylvania law:

(1) the terms of the insurance policy must be given their ordinary meaning; (2) a

term is ambiguous only if reasonably intelligent people considering the term in the context of the entire policy would honestly differ as to its meaning; and (3) the parties's intent must be determined not only from the language but from all of the circumstances.

Allstate Ins. Co. v. Drumheller, NO. 02-CV-7411, 2003 WL 22006815, at *3 (Aug. 19, 2003 E.D. Pa.), citing State Farm Fire & Cas. Co. v. Bellina, No. 02-5816, 2003 WL 21246484, at *3 (E.D.Pa. April 30, 2003).  "When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement.  When the policy language is clear and unambiguous, the court must give effect to the language of the contract."  Richmond v. Prudential Prop. & Cas. Ins. Co., 789 A.2d 271, 274 (Pa. Super. 2001).  If an insurance policy is not clear and unambiguous, "ambiguities are to be resolved in favor of the insured."  Allstate Ins. Co., 2003 WL 22006815, at *3, citing Pacific Indemnity Co. v. Linn, 766 F.2d 754, 761 (3d Cir.1985).

Plaintiff argues that the policy terms contained in the Accidental Death and Dismemberment Benefit section of the policy unambiguously establish that the plaintiff is entitled to one hundred percent of the Principal Sum for the loss of his wife's life.  However, the Accidental Death and Dismemberment provision does not stand alone and in reaching his conclusion, plaintiff fails to read the Accidental Death and Dismemberment provision in conjunction with the rest of the policy.  "The challenged language must be considered in the context of the entire policy; courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them.  Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 717 (Pa. Super. 1999) (citations omitted).  "An interpretation will not be given to one part of the contract which will annul another part of it."  Capek v. Devito, 767 A.2d 1047,

1051 (Pa. 1999), quoting Cerceo v. DeMarco, 391 Pa. 157, 137 A.2d 296, 298 (Pa. 1958).

In Prudential Property and Casualty Company v. Hinson, 277 F. Supp.2d 468, 473 (E.D. Pa. 2003), the Court elected not to adopt the interpretation of an insurance policy proposed by defendants which would have required finding that one exclusion in the policy overrode another. "Given two competing interpretations, we find that the one creating consistency is the better one, and that 'reasonably intelligent persons' would not honestly differ as to this interpretation of the policy." Id., citing Westport Ins. Co. v. Bayer, 284 F.3d 489, 496 (3d Cir. 2002); and Fed. Kemper Ins. Co. v. Ward, 679 F. Supp. 489, 494 (E.D. Pa. 1988). Plaintiff's proposed interpretation of the policy language does not create consistency.

If the language in the Accidental Death and Dismemberment Benefits provision is read to stand alone, the family plan language in the 1996 policy rider (which clarified the earlier policy language) becomes meaningless. Under the plaintiff's interpretation of the "principal sum stated" in the Accidental Death and Dismemberment Benefits provision, there would be no need to define the principal sum for family members under the family plan, as all persons under the policy would be entitled to the same principal sum. The language contained in the family plan description indicates this was not the intent of the insurer. The 1996 Policy Rider clearly and unambiguously establishes that the Principal Sum for a spouse is 60 percent of the Contributory Principal Sum where there are no insured children on the date of an accident and also that after age 70, any benefits payable under the policy for the death of an insured person are reduced to 50 percent of the benefits otherwise payable. (Pl's Br. in Opp., Ex. B, GE 000024). With the Principal Sum for a spouse thus defined, the effect of the Accidental Death and Dismemberment Benefits provision is clear when considered in the context of defendant's entire policy, as the

percentages in this provision apply to the "principal sum stated."  In order to create consistency

and to avoid annulling the family plan language, both provisions must be read together to derive

the formula used to calculate plaintiff's award.

Plaintiff further argues that the 1996 rider is inapplicable because it unilaterally reduces

the coverage that he purchased.  He avers that under Tonkovic v. State Farm Mutual Auto

Insurance Co., 521 A.2d 920, 924 (Pa. 1987), defendant must produce evidence that plaintiff

received and understood the changes to the policy contained in the rider provision.  Tonkovic is

distinguishable because it involved an insurance policy that plaintiff had never seen and that

included an exclusionary clause not present in the policy plaintiff had applied for.  Id. at 922.

Here plaintiff makes no allegation that he was never shown the language in the rider and he made

no objections to the changed language at the time the rider was issued.  The rider itself clearly

and unambiguously states at the outset that "[t]his Rider is to be attached to and *forms a part of

the Policy* shown above."  ( Id. at GE 000023) (emphasis added).

Where a rider has been added to a general policy, rules of construction dictate that

an endorsement or rider becomes and forms a part of the contract and the policy and endorsement

or rider shall be construed together.  "If there is a conflict between the terms of the endorsement

and those in the body of the main policy, then the endorsement prevails . . . ."  St. Paul Fire and

Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521,524 (3d Cir. Pa. 1981), citing, Lumbermens

Mutual Casualty Co. v. Sutch, 197 F.2d 79, 81-82 (3d Cir. 1952).  Any ambiguity in the original

language is therefore eliminated by the incorporation of the rider provision.  The 1996 rider

clarifies what the principal sum is for a spouse, clearly establishing that it is "50% of the

Contributory Principal Sum which applied to the Insured Member on the date of the accident."

(Id. at GE 000024).

Further, it is not necessary that defendant show that plaintiff understood the implications of the changed language in the policy rider. The effect of the family plan language in the rider is similar to that of a policy exclusion as it places a limitation on the amount of coverage available. "Exclusions from coverage of an insurance policy will be effective against an insured if they are 'clearly worded' and 'conspicuously displayed' without regard to whether the insured read the limitations or understood their significance." Allstate Ins. Co., 2003 WL 22006815, at *3, citing Pacific Indemnity Co., 766 F.2d at 761. In this case, the original family plan description and the subsequent 1996 rider provided limitations on coverage of an insured spouse who was over age seventy that were clearly worded and conspicuously displayed. Reasonably intelligent people considering the effect of the family plan provision on the entire policy could not conclude that the family plan did not apply when reading the Accidental Death and Dismemberment Benefits section.

## VI.  CONCLUSION

Defendant correctly determined the formula for determining the amount of benefits to be awarded to plaintiff for the death of his wife. The limitations on spousal coverage and coverage for those over age seventy were conspicuously displayed in the policy and the 1996 policy rider and clearly worded. The effect of the Accidental Death and Dismemberment provision is clear when read in conjunction with the rest of plaintiff's policy. Under the Family Plan provision, plaintiff's spouse was insured for sixty percent of the contributory principal sum (because there were no insured children under the policy) until she turned seventy. After her seventieth birthday, her coverage decreased to fifty percent of the coverage otherwise payable, or fifty

percent of sixty percent.  Under the Accidental Death and Dismemberment Benefit provision, plaintiff should be awarded one hundred percent of this amount for his spouse's loss of life. Therefore plaintiff should be awarded thirty percent of the contributory principal sum under the policy plus the applicable continuing coverage bonus.

Although the formula for determining the benefit award is clear, the correct amount of the contributory principal sum to which is should be applied is not.  This factual dispute precludes me from issuing summary judgment at this juncture.  In view of the uncertainty regarding the amount of the gross principal sum and thus the correct benefits award amount when the formula described above is applied, I will deny both parties' motions for summary judgment without prejudice to the filing of motions for summary judgment after completion of discovery on the amount of the contributory principal sum.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                        |   |                |
|------------------------|---|----------------|
|                        | : |                |
| ROSCOE FRANKLIN        | : | CIVIL ACTION   |
|                        | : | NO. 02-3359    |
|                        | : |                |
| v.                     | : |                |
|                        | : |                |
| GE FINANCIAL ASSURANCE | : |                |
| COMPANY                | : |                |

## **<u>ORDER</u>**

AND NOW, this      day of January 2004, after considering defendant's motion for partial

summary judgment, plaintiff's cross-motion for partial summary judgment, and all responses

thereto and for the reasons set forth in the accompanying memorandum, it is ORDERED that

both defendant's and plaintiff's motions are DENIED without prejudice to the filing of motions

for summary judgment after completion of discovery on the amount of the contributory principal

sum.

_____
THOMAS N. O'NEILL, JR., J.